**In re Ralph SOLIZ, Bankrupt.**

**Ralph SOLIZ, Plaintiff,**

**v.**

**SOUTHERN FARM BUREAU CASUALTY COMPANY, INC., C.W. Palmer, Commercial Union Insurance Company, Josephine McCauley and Billie Jean Williams as Representative of the Estate of Curtis Lee Howell, Defendants.**

**Bankruptcy No. 5–79–00045.
Adv. No. 584–5061.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Aug. 18, 1987.

**94**

Darvin Morrison, Sims, Kidd, Hubbert & Wilson, Lubbock, Tex., for trustee.

Andy Kupper, Levelland, Tex., for defendants McCauley and Williams.

## MEMORANDUM OF OPINION

JOHN C. AKARD, Bankruptcy Judge.

### Facts

On June 3, 1975, a truck owned by Ralph Soliz (Bankrupt) and driven by his brother was involved in a collision in Albuquerque, Bernalillo County, New Mexico. As a result of the collision, the Bankrupt's tractor and trailer were destroyed, Josephine McCauley was injured, Curtis Lee Howell was killed, and Clarence E. Blankenship's Campus Market was damaged.

On April 5, 1977, in Cause No. 3–76–01056 in Bernalillo County, New Mexico, Billie Jean Williams, Administratrix, recovered a $10,000.00 Judgment against the Bankrupt on behalf of the estate of Curtis Lee Howell, Deceased. McCauley sued the Bankrupt in Cause No. 3–76–01056 in Bernalillo County, New Mexico and on June 28, 1977 recovered a Judgment for $23,545.29. Blankenship recovered a Judgment against the Bankrupt in the amount of $12,857.07 in Cause No. CR–77–04790 in Bernalillo County, New Mexico.[1]

On June 2, 1977, in Cause No. 2286 in the District Court of Cochran County, Texas, the Bankrupt sued Southern Farm Bureau Casualty Insurance Company and C.W. Palmer, the company's agent, alleging insurance coverage. The Tort Claimants intervened in the Texas case. On May 30, 1979, Soliz filed a petition for relief under Chapter VII of the Bankruptcy Act. The Cochran County suit was removed to the Bankruptcy Court in this Adversary Proceeding. On October 23, 1986, the Court approved a compromise between the Trustee and the insurance company whereby the insurance company paid the sum of $20,-000.00[2] to the Trustee in full settlement of all claims. The Court reserved the question as to the distribution of the funds received by the Trustee in the settlement.

### Issue

The issue before the Court is whether the funds paid in settlement of the Bankrupt's suit against the insurance company are property of the estate and, thus, distributable to all creditors in accordance with the applicable Bankruptcy Act provisions, or whether they should be paid, pro rata, to the Tort Claimants.

### Statute

The Bankruptcy Reform Act of 1978 enacted the Bankruptcy Code which took effect October 1, 1979. 1 *Collier on Bankruptcy* § 7.01. The savings provisions of § 403 of the Bankruptcy Reform Act provide that cases commenced prior to October 1, 1979 continue to be governed by the

---

**1.** The holders of these Judgments are collectively referred to as the Tort Claimants.

**2.** The Tort Claimants do not object to the amount of the settlement.

Bankruptcy Act of 1898. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403, 92 Stat. 2683 (1978) (codified at 11 U.S.C. preceding § 101).

Section 70 of the Bankruptcy Act [3] is determinative of the question in this case. It lists the interests which become property of the estate and states in pertinent part:

> The trustee of the estate of a bankrupt ... [shall be] vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located ...
>
> ....
>
> (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered ...
>
> (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property....

### Discussion

■ A two-part test is used to determine whether an asset should be included in the bankrupt's estate pursuant to § 70(a): (1) an examination of the legal nature of the asset (2) in light of the purposes of the Act. *Goff v. Taylor (In re Goff)*, 706 F.2d 574 at 578 (5th Cir.1983). The purposes of the Act embody a conflict between a Trustee's attempt to gather the assets of the bankrupt for the benefit of the creditors and allowing the bankrupt an unencumbered fresh start by permitting him to begin to acquire new assets after the date of his petition. *Id.*

An analysis of the Bankrupt's insurance coverage in this case resolves this conflict as well as the issue before the Court.

■ A motor vehicle insurance policy is a contract between the automobile owner and an insurance company which provides that the company will indemnify the owner for losses or damages incurred as a result of the use of the vehicle. *See*, generally, 42 C.J.S. *Indemnity* §§ 1, 2 (1944). A full coverage policy would insure against fire, theft, collision, property oamage, and indemnity on the owner's liability, including a defense by the company of any action brought against the insured. *Merchants' & Manufacturers' Inter-Insurance Alliance v. Hansen*, 258 S.W. 257 (Tex.Civ. App.—Dallas 1924) *writ dism'd*. *See also*, 45 C.J.S. *Insurance* § 926 (1946).

■ Under the Bankruptcy Act, when a contract was completed before bankruptcy except for the payment of money that claim became a cause of action which passed to the estate. *See, e.g., Florance v. Kresge*, 93 F.2d 784 (4th Cir.1938). The Trustee succeeded to all rights of action the Bankrupt had arising from contract. Section 70(a)(6).

■ The Bankrupt's 1977 State Court suit against the insurance company and its agent alleged failure to defend for covered losses under his policy, including damage to the vehicle, bad faith actions in violation of the Texas Insurance Code and the Texas Business & Commerce Code, and violations of the Texas Deceptive Trade Practices Act. The insurance company denied that a policy had been issued to the Bankrupt. Thus, the Trustee's settlement with the insurance company resolved more than the issues of indemnity of the Bankrupt's losses by way of judgments against him in favor of the Tort Claimants.

The Tort Claimants' reliance on *Fidelity Union Casualty Co. v. Hanson*, 26 S.W.2d 395 (Tex.Civ.App.—Galveston 1930), *aff'd* 44 S.W.2d 985 (Tex.Comm'n App. *jdgmt aff'd*), *cert. denied* 287 U.S. 599, 53 S.Ct. 12, 77 L.Ed. 522 (1932), is misplaced. In that case, the personal injury judgment was on appeal when the Bankrupt filed his bankruptcy petition. Therefore, it was not a final judgment provable in the bankruptcy proceeding. Under the Bankruptcy Act, debts not provable were not discharged.

---

**3.** The Bankruptcy Act of 1898 appears at 11 U.S.C. § 1 *et seq.* References to Section numbers are to Sections in the Bankruptcy Act.

Thus, the Bankrupt was liable for the judgment debt when the judgment became final. The *Hanson* Court focused on the indemnity provisions of the Bankrupt's policy when it held that the Bankrupt's right to indemnity did not mature until the judgment became final post-petition and the policy constituted an asset outside the Bankrupt's estate. In the instant case, the judgments against the Bankrupt were final, provable and dischargeable in the bankruptcy proceedings. In addition, there was no question in *Hanson* as to whether the Bankrupt was covered by the insurance policy, whereas in the instant case the insurance company denied that a policy was in effect.

The two cases closest on point to the case at bar are *Palmer v. Travelers Insurance Co. (In re Schafer)*, 319 F.2d 296 (5th Cir.1963), and *Silverman v. Hartford Accident & Indemnity Co. (In re Hronek)*, 563 F.2d 296 (6th Cir.1977). In *Schafer*, the Bankrupt had a judgment for $253,161.50 entered against him in state court in April 1960. On July 21, 1960, he filed his bankruptcy petition. Within the bankruptcy case, the Trustee applied to sue Schafer's insurance carrier (among others) for negligent failure to settle the action against Schafer which resulted in the judgment in state court. The Referee decided that the relief requested by the Trustee should be denied because: (1) no right of action for negligent failure to settle the damage suit existed on the date of the filing of the petition; (2) no such right of action vested in the Trustee; and (3) no such right of action is owned by the Trustee. *Id.* at 297. The Fifth Circuit reversed and remanded stating: "The purpose of Section 70 is to spell out what property or rights in property shall belong to the bankrupt's estate, and what rights shall remain the personal property of the bankrupt ... [W]here the statute transfers to the Trustee all 'property, including rights of action ...', it is incumbent on the bankrupt ... to show clearly that some interest, right or expectancy should not become a part of the bankrupt's estate—otherwise, whatever claim—including potential and contingent claims—that the bankrupt owns at the time of his petition, becomes a part of his estate, with title thereto in the Trustee." *Id.* at 299. In his concurring opinion, Judge Brown noted that the Bankrupt had valuable existing rights to which the Trustee succeeded, including a suit for damages against his insurer for negligence in failing prudently to settle within policy limits, declaratory judgments, and third-party complaints. *Id.* at 300.

In *Hronek*, the Bankrupt, Hronek, bought a car but, before title passed to him, he was involved in an accident in which Sainsbury was injured. Sainsbury filed suit against the Hronek and the dealer. Together they sued the dealer's insurance carrier (Hartford) seeking a ruling that Hronek was an insured under the dealer's insurance policies. The District Court found in Hronek's favor and the Sixth Circuit affirmed. Hronek's lawyer in the injury suit filed a motion requesting that Hartford pay his attorney fees in connection with the case since it was obligated to defend Hronek. Thereafter Hronek filed a bankruptcy petition. He did not schedule the lawyer as a creditor. The Trustee also asserted a claim for any funds representing amounts due Hronek from Hartford for failure to defend against Sainsbury's claim. Hartford then offered to pay $2,500.00 as the disputed legal fees. The Trustee filed a complaint to recover the property represented by Hartford's offer to pay. Hartford admitted the offer to pay and requested that the Bankruptcy Court determine whether payment should be made to the Trustee for the benefit of the creditors of the estate or whether payment should be made to the lawyer. The Bankruptcy Court held that the funds from Hartford were an asset of the Bankrupt's estate; that the lawyer had no contractual relationship with Hartford to support his claim for attorney's fees; that Hartford's liability derived from a contract for the benefit of Hronek; and that the lawyer was an unsecured creditor of Hronek. On appeal the District Court reversed, but on further appeal the Sixth Circuit upheld the Referee's decision finding that §§ 70(a)(5) and 70(a)(6) included as assets of a bankrupt's estate claims possessed by a bankrupt against an insurance company (citing *Anderson v. St. Paul Mercury Indemnity Co.*, 340 F.2d

406 (7th Cir.1965); and *Moore v. United States Fidelity and Guaranty Co.*, 325 F.2d 972 (10th Cir.1963)). The Court stated: "Thus, it is clear that if a potential claim ... for failure to defend belonged to the bankrupt ... this claim passed to the Trustee by virtue of the bankruptcy petition." *Id.* at 298.

The only difference between *Hronek* and the instant case is that the claimant to the settlement fund in question was an attorney rather than the person injured in the accident. *Hronek* clearly holds that a cause of action for failure to defend belongs to the bankrupt and, thus, passes to the Trustee on the date of the filing of the bankruptcy petition.

The Tort Claimants cite *Wells v. Piggott (In re Fay Stocking Co.)*, 95 F.2d 961 (6th Cir.1938) for the proposition that liability insurance is not the property of a bankrupt's estate. However, as with the cases distinguished previously, the Court focused on a liability policy, not a contract right dispute as in the instant case.

■ The Tort Claimants plead a constructive trust theory. There can be no constructive trust as to the settlement proceeds here in question for the reason that the cause of action settled by the Trustee was a cause of action which belonged to the Bankrupt exclusively since it was a dispute as to an alleged contract right between the Bankrupt and the insurance company. The Tort Claimants were not third-party beneficiaries of that contract. Further, the Bankrupt's cause of action was, in part, based on grounds unrelated to the claims of the Tort Claimants.

### Conclusion

■ The Court finds that the proceeds of the settlement between the Trustee-in-

Bankruptcy and Southern Farm Bureau Casualty Company, Inc., C.W. Palmer, and Commercial Union Insurance Company are the property of the Bankrupt's estate and not property of the Tort Claimants.[4]

Order accordingly.[5]

---

**4.** Under the Bankruptcy Code, contingent claims are provable as debts in the bankruptcy and are subject to discharge. Thus, a pending personal injury claim can be discharged. It is common practice to allow a pending personal injury case to proceed to judgment in the state court with the insurance carrier defending. Any judgment up to policy limits is paid by the carrier direct to the injured party. Any recovery in excess of policy limits is referred to the Bankruptcy Court for handling as a general unsecured claim in the bankruptcy proceeding.

Often the personal injury plaintiff agrees to look only to the insurance proceeds within policy limits and waive any claim against the bankruptcy estate. The Court feels that this is the proper result where there is no issue as to the existence of a policy.

**5.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

