IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 92-4645

IN THE MATTER OF:  LEWIS ANSON DAVID EDGEWORTH, M.D.,

Debtor,

DONNA ELAINE HOUSTON, ET AL.,

Appellants,

v.

LEWIS ANSON DAVID EDGEWORTH, M.D.,

Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

May 27, 1993
May 27, 1993

Before JOHNSON, GARWOOD, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Christine Genson, the appellant's mother, died on June 7, 1989, while under the care of appellee Dr. Lewis Edgeworth. A month later, Edgeworth filed for protection under chapter 7 of the Bankruptcy Code. Appellants did not participate in the bankruptcy case[1] but, after Edgeworth received a discharge, they sought and obtained bankruptcy court approval to file a medical malpractice

---

[1] There is some dispute about whether the appellants were properly listed on the schedule of creditors. Houston filed no proof of claim in the bankruptcy proceeding.

claim in state court.[2] Shortly afterward, Edgeworth persuaded the bankruptcy court to reverse itself -- to enforce his discharge by enjoining the lawsuit pursuant to 11 U.S.C. § 524(a). The district court affirmed. The question before us is whether the appellants may pursue their lawsuit against Dr. Edgeworth in order to collect any judgment solely from the proceeds of his malpractice liability policy. We hold that they may do so, because 11 U.S.C. § 524(e) excludes the liability insurance carrier from the protection of bankruptcy discharge, and the proceeds of the policy were not property of Edgeworth's estate.

## STANDARD OF REVIEW

As this case turns on the construction of sections 524 and 541 of the Bankruptcy Code, it presents questions of law that are reviewed <u>de</u> <u>novo</u>.[3]

## DISCUSSION

### A.   A Discharge Under § 524 Does Not Preclude a Suit to Recover from an Insurer

The bankruptcy court and district court enjoined appellants from proceeding with their state court lawsuit against Dr. Edgeworth because they apparently believed that the malpractice

---

[2]    In April 1991, Houston filed a motion to lift the stay pursuant to 11 U.S.C. § 362. Edgeworth did not respond, and the bankruptcy court granted the motion on May 22, 1991. Technically, this motion was improper because the discharge had extinguished the stay and replaced it with a permanent injunction under section 524(a).

[3]    <u>In re</u> <u>Besing</u>, 981 F.2d 1488, 1491 (5th Cir. 1993); <u>In re</u> <u>Bradley</u>, 960 F.2d 502, 507 (5th Cir. 1992), <u>cert. denied</u>, ____ U.S. ____, ____ S. Ct. ____, 61 U.S.L.W. 3403 (Mar. 8, 1993); <u>In re</u> <u>Fussell</u>, 928 F.2d 712, 715 (5th Cir. 1991), <u>cert. denied</u>, ____ U.S. ____, 112 S. Ct. 1203, 117 L.Ed.2d 443 (1992).

2

claim was discharged under section 727 and 524. In general, section 524 protects a debtor from any subsequent action by a creditor whose claim has been discharged in a bankruptcy case. To ensure that a discharge will be completely effective, it operates as an injunction against enforcement of a judgment or the commencement or continuation of an action in other courts to collect or recover a debt as a personal liability of the debtor. 3 Collier on Bankruptcy ¶ 524.01, at 524-4 (15th ed.). A discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt. Section 524(e) specifies that the debt still exists and can be collected from any other entity that might be liable.[4]

In the liability insurance context, of course, a tort plaintiff must first establish the liability of the debtor before the insurer becomes contractually obligated to make any payment.[5] The question, then, is whether section 524(a) acts to bar such liability-fixing suits even if a plaintiff has agreed to foreswear

---

[4]    See Underhill v. Royal, 769 F.2d 1426, 1431-32 (9th Cir. 1985) (stating that the bankruptcy court has no power to discharge the liabilities of a nondebtor); Union Carbide Corp. v. Newboles, 686 F.2d 593, 595 (7th Cir. 1982) (reaching the same result under section 16 of the Bankruptcy Act); see also, 3 Collier on Bankruptcy ¶ 524.01[3], at 524- 16 to -17. But see In re A.H. Robbins Co., 880 F.2d 694, 700-02 (4th Cir.) (rejecting a literal application of section 524(e) and upholding the bankruptcy court's injunction preventing tort claimants from seeking recovery from nondebtor entities that had participated in an aggregated settlement), cert. denied, 493 U.S. 959, 110 S. Ct. 376, 107 L.Ed.2d 362 (1989).

[5]    Texas, the state in which this case arose, does not allow direct actions against the insurer.

3

recovery from the debtor personally and only to look to the policy proceeds.

Most courts have held that the scope of a section 524(a) injunction does not affect the liability of liability insurers and does not prevent establishing their liability by proceeding against a discharged debtor.[6] This interpretation is grounded in both textual and equitable foundations. Section 524(a)(2) enjoins only suits "to collect, recover or offset" a debt as the "personal liability of the debtor", a phrase that has been interpreted to exclude merely nominal liability. In re Fernstrom Storage and Van Co., supra note 6.

The foundation of this reading of § 524(a)(2) is that it makes no sense to allow an insurer to escape coverage for injuries caused by its insured merely because the insured receives a bankruptcy discharge. "The 'fresh-start' policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured." Jet

_____

[6] See, e.g., First Fidelity Bank v. McAteer, ____ F.2d ____, 1993 WL 23782 (3d Cir. Feb. 3, 1993); Green v. Welsh, 956 F.2d 30, 35 (2d Cir. 1992); In re Fernstrom Storage & Van Co., 938 F.2d 731, 733-34 (7th Cir. 1991); In re Jet Florida Systems, Inc., 883 F.2d 970, 976 (11th Cir. 1989) (per curiam) (adopting the district court opinion); In re Beeney, 142 B.R. 360, 362 (Bankr. 9th Cir. 1992); In re Greenway, 126 B.R. 253, 255 (Bankr. E.D. Tex. 1991); In re Peterson, 118 B.R. 801, 804 (Bankr. D.N.M. 1990); In re Traylor, 94 B.R. 292, 293 (Bankr. E.D.N.Y. 1989); In re Lembke, 93 B.R. 701, 702-03 (Bankr. D. N.D. 1988); In re White, 73 B.R. 983 (Bankr. D.D.C. 1987); In re Mann, 58 B.R. 953, 956 (Bankr. W.D. Va. 1986). But see In re White Motor Credit, 761 F.2d 270 (6th Cir. 1985) (barring continuation of personal injury claims that would have been paid by the debtor's insurers). The holding of White Motor Credit was explicitly rejected by the courts in Green and Jet Florida.

<u>Florida</u>, 883 F.2d at 975; <u>see</u> <u>Green</u>, 956 F.2d at 33.  "Such a result would be fundamentally wrong."  <u>Lembke</u>, 93 B.R. at 703.[7]

Finally, allowing commencement or continuation of such actions does not inequitably burden the debtor.  Burden there is, in the sense that attending depositions and trial may take up Edgeworth's time.  But this is not a burden alleviated by § 524 when the purpose of the suit is to establish Edgeworth's nominal liability in order to collect from his insurance policy.[8] Edgeworth has not asserted that he will be required to pay the costs of his defense against appellants' suit or that the insurance company denied coverage or is defending under a reservation of rights.  Such threats to Edgeworth's pocketbook might require a different result under § 524.[9]  Thus, as long as the costs of defense are borne by the insurer and there is no execution on

---

[7]    See <u>Green</u>, 956 F.2d at 35; <u>Jet Florida</u>, 883 F.2d at 976; <u>Mann</u>, 58 B.R. at 958; <u>Rowe v. Ford Motor Co.</u>, 34 B.R. 680 (N.D. Ala. 1983); <u>Elliott</u>, 25 B.R. at 310; <u>McGraw</u>, 18 B.R. at 143.

[8]    Edgeworth argues that such transactions actually harm debtors, causing their post-bankruptcy insurance premiums to be higher.  This is not true.  Edgeworth confounds cause and correlation.  Higher insurance premiums result not from a plaintiff's recovery from the insurance company, but from the debtor's actions that make the debtor a greater risk to insurer. While insurance companies often use policy claims as a surrogate measure of risk, allowance of the claim does not <u>cause</u> the higher premiums.

[9]    <u>But</u> <u>see</u> <u>In re Walker</u>, 927 F.2d 1138, 1144 (10th Cir. 1991) (allowing a post-discharge suit to continue even though the debtor would incur legal expenses).

judgment against the debtor personally, section 524(a) will not bar a suit against the discharged debtor as the nominal defendant.[10]

Edgeworth makes much of the fact that the appellants never filed a claim in the bankruptcy proceeding, and it is true that their failure to do so waived their ability to recover from Edgeworth personally. But, at least in a case like this where no question has been raised about the sufficiency of the liability insurance coverage, a plaintiff's failure to file in the bankruptcy proceeding should not impair the right to file suit against another party who may be liable on the debt. See Green, 956 F.2d at 35; Jet Florida, 883 F.2d at 974-75, and cases cited therein; In re White, 73 B.R. at 984; Mann, 58 B.R. at 958.

**B.   The Insurance Proceeds Were Not Property of the Estate**

As part of his argument that Houston's claim is barred, Edgeworth also asserts that the insurance proceeds sought by Houston were part of the bankruptcy estate and may not now be recovered. Edgeworth does not argue that these "insurance proceeds" literally came into the estate and were distributed as part of his Chapter 7 liquidation. In fact, Edgeworth never explicitly tendered the insurance policy or any insurance proceeds

---

[10] Even if the insurance company denies coverage, the debtor will not be impermissibly burdened. If the insurance company is unwilling to defend its insured, the debtor may simply default, knowing that the judgment will be unenforceable except against the insurance company. See Jet Florida, 883 F.2d at 976. The judgment creditor may then litigate with the insurance company.

into the bankruptcy estate.[11]  Instead, Edgeworth argues that the insurance proceeds were part of the estate as a matter of law and that his discharge acted to bar forever any prepetition claims against the insurance policy.

"Property of the estate," defined in 11 U.S.C. § 541(a), includes all legal or equitable interests of the debtor in property as of the commencement of the case.  This definition is intended to be broadly construed,[12] and courts are generally in agreement that an insurance policy will be considered property of the estate.[13] Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself.[14]  Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate.[15]

---

[11]    In his schedule of personal property, Edgeworth specifically denied any interest in any insurance policies.

[12]    United States v. Whiting Pools, Inc., 462 U.S. 198, 205, 103 S. Ct. 2309, 2314, 76 L.Ed.2d 515 (1983).

[13]    See First Fidelity Bank v. McAteer, ___ F.2d ___, 1993 W.L. 23782 (3d Cir. Feb. 3, 1993); McArthur Co. v. Johns-Manville Corp., 837 F.2d 89 (2d Cir.), cert. denied, 488 U.S. 868, 109 S. Ct. 176, 102 L.Ed.2d 145 (1988); In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1399 (5th Cir. 1987); Tringali v. Hathaway Machine Co., 796 F.2d 553 (1st Cir. 1986); A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1985), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L.Ed.2d 177 (1986); In re Davis, 730 F.2d 176 (5th Cir. 1984); Wedgeworth v. Fibreboard Corp., 706 F.2d 541 (5th Cir. 1983).

[14]    See, e.g., McAteer, ____ F.2d at ____; In re Titan Energy, Inc., 837 F.2d 325 (8th Cir. 1988); In re Mego Int'l, Inc., 28 B.R. 324 (Bankr. S.D.N.Y. 1983).

[15]    See Palmer v. Travelers Ins. Co., 319 F.2d 296 (5th Cir. 1963) (claim against the insurer for failure to settle was

Acknowledging that the debtor owns the policy, however, does not end the inquiry. "The question is not who owns the policies, but who owns the liability proceeds."[16] In *In re Louisiana World Exposition, Inc.*, for example, even though the policy was property of the estate, the proceeds of the liability policy were payable to the directors and officers of the corporation and were not part of the debtor's estate.[17] Likening the circumstances before it to cases in which a purchaser of an insurance policy assigned its proceeds to other entities,[18] the court noted that ownership of a policy "does not inexorably lead to ownership of the proceeds."[19]

The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should

---

part of the estate); *In re Soliz*, 77 B.R. 93 (Bankr. N.D. Tex. 1987) (claims against the insurer for bad faith and failure to defend were part of the estate).

[16] *Louisiana World Exposition*, 832 F.2d at 1399.

[17] *Id*. at 1400.

[18] *In re Ivory*, 32 B.R. 788, 793-94 (Bankr. D. Or. 1983); *In re Family & Industrial Medical Facilities, Inc.*, 25 B.R. 443, 450-51 (Bankr. E.D. Pa. 1983); *In re Dias*, 24 B.R. 542, 545 (Bankr. D. Id. 1982); *In re Moskowitz*, 14 B.R. 677, 680-81 (Bankr. S.D.N.Y. 1981).

[19] *Louisiana World Exposition*, 832 F.2d at 1401; *see* McAteer, ____ F.2d at ____.

neither enhance nor decrease the bankruptcy estate.[20]  In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.[21]

Examples of insurance policies whose proceeds are property of the estate include casualty, collision, life, and fire insurance[22] policies in which the debtor is a beneficiary.  Proceeds of such insurance policies, if made payable to the debtor rather than a third party such as a creditor, are property of the estate and may inure to all bankruptcy creditors.  But under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy.  Those proceeds will normally be

---

[20]    See McAteer, ____ F.2d at ____ (stating that "if the owner of a life insurance policy did not have an interest in its proceeds, the filing of the petition in bankruptcy cannot create one"); In re Gagnon, 26 B.R. 926, 928 (Bankr. N.D. Pa. 1983) (stating that "the estate's legal and equitable interests in property rise no higher than those of the debtor").

[21]    Once a court has determined that an insurance policy is property of the estate, 11 U.S.C. § 362 should stay any injured party from suing or recovering from the debtor's insurer.  The stay will adequately protect both the bankruptcy estate and the claimants' interests in the proceeds of the policy.  In the mass tort context, the decisions by several courts to include the proceeds as property of the estate appear to be motivated by a concern that the court would not otherwise be able to prevent a free-for-all against the insurer outside the bankruptcy proceeding.  See cases cited supra note 14.  There was also a threat that unless the policy proceeds, were marshalled in the bankruptcy proceeding, they would not cover plaintiffs' claims and would expose the debtor's estate.  These concerns are answered once the court finds that the policy itself is property of the estate, the section 362 stay should adequately protect the interests of all parties involved.

[22]    See, e.g., McAteer, ___ F.2d at ___ (life insurance); Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 996 (5th Cir. 1985) (fire insurance); Bradt v. Woodlawn Auto Workers, 757 F.2d 512, 515 (2d Cir. 1985) (insurance payment for auto repairs).

9

payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.

Although Dr. Edgeworth's liability policy was part of the Chapter 7 estate, the proceeds of that policy were not. Dr. Edgeworth has asserted no claim at all to the proceeds of his medical malpractice liability policy, and they could not be made available for distribution to the creditors other than victims of medical malpractice and their relatives. Moreover, no secondary impact has been alleged upon Edgeworth's estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds. Consequently, in this case the insurance proceeds were not part of the estate as a matter of law, and section 524 does not bar appellants from pursuing their state court suit against Dr. Edgeworth so they can recover against policy proceeds.

### CONCLUSION

For the foregoing reasons, the decisions of the bankruptcy and district courts are **REVERSED.**