In re the TAYLOR AGENCY, INC., d/b/a Taylor Insurance Agency, Inc., Debtor.

In re Patricia Lynn Taylor, Debtor.

Nos. 00–12425–WSS, 00–12428–WSS.

United States Bankruptcy Court, S.D. Alabama.

June 14, 2001.

William H. Hardy, Jr., Mobile, AL, for Siuprem, Inc.

Carol H. Stewart and Michael Leo Hall, Birmingham, AL, for Morgan Premium Finance, Inc.

Winston R. Grow, Mobile, AL, for American Resources Insurance Company.

Michael J. Clemmer, Birmingham, AL, for Premium Assignment Corporation.

C. Michael Smith and William A. Kimbrough, Jr., Mobile, AL, for Debtors.

## ORDER

WILLIAM S. SHULMAN, Bankruptcy Judge.

This matter came before the Court on the trial of the involuntary bankruptcy proceeding filed against the Taylor Agency, Inc., (hereinafter referred to as the "Taylor Agency"), and Patricia Lynn Taylor (hereinafter individually referred to as "Taylor" and jointly referred to as "Debtors"), and the motion of the Debtors requesting that the Court abstain or dismiss the proceedings. After a hearing on the merits, the Court took this matter under submission.

## FINDINGS OF FACT

The petitioning creditors, Morgan Premium Finance, Inc. (hereinafter referred to as "Morgan"), American Resources Insurance Company ( hereinafter referred to as "American"), and Siuprem, Inc. (hereinafter " Siuprem") initiated this involuntary proceeding on June 22, 2000 by filing an involuntary petition against Taylor and the Taylor Agency. Premium Assignment Corporation (hereinafter referred to as "Premium") joined as a petitioning creditor on October 19, 2000. The Debtors filed answers to the involuntary petition and filed motions to abstain or dismiss the proceeding.

Premium and American hold judgments against The Taylor Agency totaling over $303,000.00. Morgan and Siuprem are insurance premium finance companies that did business with the Debtors. The Taylor Agency is a corporation, now defunct, that operated as an insurance agency in Gilbertown, Alabama and Taylor was its president.

In the course of doing business, the Debtors would put together insurance policies for their clients, and Morgan and Siuprem would from time to time, enter into a financial arrangement whereby they would finance the premiums. Drafts or checks would be issued by them to the Taylor Agency on behalf of the insured. These would be deposited in a bank account of the Taylor Agency to be used for payment of the premium to various insurance companies providing insurance to the insured.

Siuprem filed suit against the Debtors in the United States District Court, Southern District of Alabama, in September 1999. The complaint alleged that the Debtors negligently made advances on behalf of Siuprem and other premium finance companies on behalf of the same insured and that the Debtors committed fraud in obtaining loans to finance the insurance premiums. In addition, exhibits admitted in evidence reflect a number of checks issued by The Taylor Agency returned for insufficient funds. ( Exhibit SIUP–G). The Taylor Agency agreed to indemnify Suiprem for any losses under the draft authority. (Exhibit SIUP–B). In all, Siuprem has claims against the Taylor Agency for approximately $517,000.00.

Morgan placed into evidence documents that showed the Taylor Agency liable to Morgan for checks returned for insufficient funds and for unearned premiums which were due to be paid back to Morgan when certain insurance contracts were canceled. The approximate amount due to Morgan from the Taylor Agency based on these sums totaled $51,000.00 plus other fees and charges.

The Alabama Department of Insurance filed a 31 count complaint against Taylor on February 25, 2000 charging that she had violated the Alabama Insurance Code by making intentional misrepresentations, engaging in fraudulent conduct, failing to account for and pay funds over to an insurer, or others, and misappropriating, converting, or unlawfully withholding money belonging to insurers or others. (See Exhibit MP–14).

An emergency order to cease and desist was entered by the Alabama Department of Insurance on February 25, 2000. On April 12, 2000, an order was entered upon the default of Taylor to respond to the complaint. The order found that she had committed the violations set forth in the complaint, and revoked her agency and broker licenses. The order further required that she turn over any funds and premiums which she received and held in trust, and also ordered her to reimburse all monies owed to insureds, insurers, or others for monies owed as a result of the insurance transactions contained in the complaint. (Exhibit MP–16).

The evidence further shows that Taylor signed insurance premium finance agreements with both Siuprem and Morgan as an agent/broker, whereby she agreed to refund any unearned commissions and unearned premiums, thereby creating personal liability for at least part of the indebtedness owed by the Taylor Agency. (Exhibit MP–19, 21; Exhibit Siup–D).

American submitted into evidence a complaint which was filed in the Circuit Court of Mobile County, Alabama against the Taylor Agency and Taylor alleging that the Taylor Agency owed American for premiums collected, but not paid, and for certain commissions which should have been refunded to American. Individual liability against Taylor was claimed because of an indemnity agreement dated November 20, 1991, wherein the complaint alleged Taylor agreed to reimburse American for losses sustained by the failure of the Taylor Agency to make payment to American. (See Exhibit AR–5). The indemnity agreement was executed as follows: " Lynn M. Taylor, Sec.Tres., of the Taylor Agency, Inc.".

The Taylor Agency was issued an errors and omission insurance policy by Employer's Reinsurance Corporation covering the period from May 20, 1999 to May 20, 2000. (See Ex. Siup. M). The named insured is "The Taylor Agency, Inc.", and the term "insured" is defined in Section V to include the named insured and any owner, partners, executive officer, or employee of the named insured while acting within the scope of that person's duties.

Under the policy, Employers Reinsurance Corporation agreed to pay the liability imposed on the insured for damages caused by:

(a) any negligent act, error, or omission of the Insured or any person for whose acts the Insured is legally liable . . .

(§ 1(a)).

The original exclusions appearing on page 3 of Form ERC 1219J were amended by the endorsement PAL–11 which states:

IT IS AGREED that this policy is extended to cover dishonest, fraudulent, criminal, or malicious acts committed by an employee of the Named Insured, and

paragraph (a) of the section of this policy captioned "Exclusions" is hereby amended accordingly. The coverage provided by this Endorsement shall extend to the Named Insured and any Insured provided that such insured did not personally participate or ratify the dishonest, fraudulent, or criminal act.

The Taylor Agency would appear, therefore, to be insured against dishonest, fraudulent, criminal, or malicious acts committed by its employee Taylor.

## CONCLUSIONS OF LAW

### DISMISSAL UNDER § 303(b)(1)

█ The Debtors raised in their reply brief the issue that the petitioning creditors have not met their burden under 11 U.S.C. § 303(b)(1).[1] Specifically, Debtors claim that less than three of the petitioning creditors hold a claim against the Debtors that is not contingent as to liability. The facts in the case clearly show that as to the Taylor Agency, all four of the petitioning creditors hold non-contingent claims, some of which are liquidated in the form of a judgment. However, the evidence is less clear with respect to the individual debtor, Patricia Lynn Taylor. Premium had a summary judgment entered against the Taylor Agency and had no resolution of its suit against Taylor, individually. (See Exhibits PAC 1 and 2). Nor was any evidence introduced at trial that would show what the nature of Premium's suit was as to Taylor. American filed suit against the Taylor Agency in state court on theories of an itemized account and breach of contract, and sued Taylor on

an indemnity agreement. (See Exhibits AR 2 and 4).

Siuprem and Morgan have shown Taylor individually liable pursuant to their premium finance agreements which she executed. However, American relies on the indemnity agreement which was signed by Taylor, but executed in a corporate capacity. The language of the indemnity refers to "we, the undersigned" and the only signature is that of Taylor as secretary–treasurer of the Taylor Agency, Inc. In the case of *Marriott International, Inc. v. deCelle*, 722 So.2d. 760 (Ala.1998) a creditor sued to collect on a guaranty from the debtor's president in his individual capacity. Although the guaranty agreement that deCelle signed was in his representative capacity as president, the body of the guaranty contract stated that the under-signed "individual" guarantees the debt of Sum Big Stores, Inc. The facts in the instant case are similar. The Alabama Supreme Court reversed the trial court which had dismissed the suit. The Court stated that "taken, as a whole, the guaranty contract is inconsistent as to whether Mr. deCelle signed in his representative capacity. Thus, the contract is ambiguous as to whether the parties intended Mr. deCelle to guarantee the debt in his individual capacity." deCelle, 722 So.2d at 763 ( citations omitted).

█ The burden is on the petitioning creditor to establish a prima facie case that there is no bona fide dispute or that the claim is not contingent as to the liability. In determining whether a creditor's claim is subject to a "bona fide dispute"

---

1. 11 U.S.C. § 303 states:
 (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under Chapter 7 or 11 of this title-
 (1) by three or more entities, each of which is either a holder of a claim against such person

that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

within the meaning of Section 303(b)(1), the courts have adopted an objective standard. *In the Matter of Earl Sims*, 994 F.2d 210 (5th Cir.1993); *In re Eastown Auto Co.*, 215 B.R. 960 (6th Cir. BAP 1998).

 A bona fide dispute exists "if there is a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to disputed fact ..." *B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65, 66–67 (3rd Cir.1989). When applying this test, the court must ascertain whether there is an objective basis for either a legal or factual dispute as to the validity of the debt. *In the Matter of Busick*, 831 F.2d 745, 749 (7th Cir.1987). The indemnity agreement relied upon by American is ambiguous as to whether Taylor guaranteed the debt of the Taylor Agency.

 The brief of the petitioning creditors refers to each petitioner having claims for dishonest, fraudulent and negligent acts against the Debtors. Even if true, an unliquidated tort claim is contingent as to liability. *Federal Trade Commission v. American Institute for Research and Development*, 219 B.R. 639, 648 (D.Mass. 1998). The evidence in the case has not revealed the nature of all of the petitioners' claims against Taylor. Premium did not even offer any evidence of the type of claim it had against Taylor, nor did it introduce a copy of its complaint that was filed in state court.

 The petitioners relied to an extent upon the negative inferences to be drawn from Taylor asserting the Fifth Amendment privilege in response to numerous questions. The court is permitted to draw inferences from a witness's refusal to testify on Fifth Amendment grounds. *Baxter v. Palmigiano*, 425 U.S. 308, 96

S.Ct. 1551, 47 L.Ed.2d 810 (1976). The petitioner must first offer evidence which tends to prove each part of their case. The invocation of the Fifth Amendment privilege, standing alone, is not sufficient evidence to constitute probative proof of the petitioners' case. *In re Curtis*, 177 B.R. 717, 720 (Bkrtcy.S.D.Ala.1995). In the instant case there was insufficient evidence that at least three of Taylor's petitioning creditors had claims that were not contingent and were not subject to a bona fide dispute.

Therefore, the Court concludes that the claim of American as to Taylor is subject to a bona fide dispute and that fewer than three petitioning creditors have met their burden of proof with regard to the requirements under 11 U.S.C. § 303(b)(1). Of the petitioning creditors, only Morgan and Suiprem have shown claims which are not contingent as to liability and are not subject to a bona fide dispute as to Taylor. The involuntary petition as to Patricia Lynn Taylor is due to be dismissed.

ABSTENTION AND DISMISSAL UNDER § 305(a)(1)

 The Debtors contend that the Court should abstain or dismiss the involuntary petition for three reasons: (1) there are no assets to administer, (2) the creditors have adequate remedies under state law, and ( 3) the best interests of debtors and creditors merit § 305(a)(1) dismissal or abstention. The burden of proof is upon the parties seeking abstention and dismissal. *In re Sherwood Enterprises, Inc.*, 112 B.R. 165, 167 (Bankr.S.D.Texas 1989). Abstention and dismissal under § 305(a)(1) is applied very narrowly and is only proper in extraordinary circumstances. *In re Manchester Heights Associates*, 140 B.R. 521, 523 (Bankr.W.D.Mo. 1992). In the case *In re Luftek, Inc.*, the court construed § 305(a)(1) and said as follows:

It also is apparent that the courts will have to exercise great care in using the discretion granted by Section 305(a) to dismiss a case. To be sure, it could be said the dismissal would be in the interest of creditors and debtor in many of the proceedings commenced under the Bankruptcy Code; this Court could dispose of much of its calendar if its discretion was unbridled. There is an inherent risk to our system of jurisprudence in any Act of Congress which gives the courts such broad powers to refuse jurisdiction over a case. This risk is compounded by the finality and non-appealability of an order entered under this section. Indeed, by giving an example of the situation in which abstention or dismissal would be appropriate, Congress has indicated that it intended Section 305(a) dismissals to be the exception rather than the rule.

*In re Luftek, Inc.* 6 B.R. 539, 548 (Bankr.E.D.N.Y.1980) see also *In re Iowa Trust,* 135 B.R. 615, 621 (Bankr.N.D.Iowa 1992).

The gist of the Debtor's assertion that the Court should abstain or dismiss relates to whether there are any assets to administer. The petitioning creditors in their brief have made much of their contention that the Debtors have numerous assets for the Court to administer. However, were it not for the errors and omissions insurance policy, this Court doubts an involuntary petition would have ever been filed. Therefore, the Court will focus its attention on whether the proceeds of the errors and omissions policy are property of the estate.

In the case of *In re Edgeworth,* 993 F.2d 51, 55–56 (5th Cir.1993) the Court held that the proceeds of a physician's malpractice liability policy were not property of his Chapter 7 estate, stating:

Acknowledging that the debtor owns the policy, however, does not end the inquiry.

The question is not who owns the policies, but who owns the liability proceeds. (Footnote omitted).... The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then the payment should neither enhance nor decrease the bankruptcy estate. (Footnote omitted). In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

In the instant case, the Taylor Agency policy inures to the benefit of others. The facts of the *Edgeworth* case are distinguishable from those in this case. In *Edgeworth,* a patient of a bankrupt doctor who failed make a claim in the doctor's bankruptcy case, sought to make a claim on a medical malpractice policy maintained by the doctor. Finding that the former patient was not precluded from asserting the claim under the policy, the court made clear that any proceeds from a medical malpractice policy would inure to the injured party and not his general unsecured creditors.

In this case, the policy at issue is an errors and omission policy and the Taylor Agency, Inc., and Patricia Lynn Taylor are insureds under the policy. Even more importantly, there are multiple competing creditors going against a policy limited in its coverage amount. This Court is aware that over 35 cases have been filed in state court (some of which have been removed to the Bankruptcy Court) seeking claims against the Taylor Agency. It is certainly possible that the claims of creditors will exceed the limits of the policy.

In an earlier case, *In re Louisiana World Exposition*, 832 F.2d 1391 ( 5th Cir.1987), the Fifth Circuit distinguished the difference between ownership of a policy and ownership of the proceeds of that policy. That case dealt with the proceeds of a directors and officers liability insurance policy. The court held that proceeds were not part of the corporation's bankruptcy estate even though the policies were purchased and owned by the corporation. The policies at issue in that case provided liability coverage only for the corporate debtor's directors and officers and for the obligation of the corporation to indemnify those directors and officers. See *In re Louisiana World Exposition*, 832 F.2d at 1398.

The Fifth Circuit revisited this issue in the case of *Matter of Vitek, Inc.*, 51 F.3d 530 (5th Cir.1995). It also dealt with a liability policy that covered a corporation's directors and officers and held that the proceeds were not part of the debtor's bankruptcy estate. The court observed that "since Louisiana World Exposition was decided, the distinction drawn between ownership of liability policies and ownership of the proceeds of those policies has not been broadly applied." 51 F.3d 530, 534. The court also stated that:

Faced with the typical situation in which a debtor corporation's liability policies provide the debtor and thus the estate with direct coverage against third party claims, virtually every court to have considered the issue has concluded that the policies-and clearly the proceeds of those policies-are part of the debtor's bankruptcy estate, irrespective of whether those policies also provide liability coverage for the debtor's directors and officers. (Footnote omitted). Most courts do not even recognize a technical distinction between ownership of insurance policies and ownership of the proceeds of those policies: They simply

conclude that such policies-and, by implication, the proceeds of such policies-are valuable properties of debtors' bankruptcy estates. (Footnote omitted).

*Matter of Vitek, Inc.* 51 F.3d 530, 534 citing *MacArthur Co. v. Johns–Manville Corp.*, 837· F.2d 89, 92 (2nd Cir.1988); *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 560–61 (1st Cir.1986), *In re Davis*, 730 F.2d 176, 184 (5th Cir.1984).

The rationale for this is evident. If the proceeds of a liability policy are split between the bankrupt and the non-bankrupt insureds, a race to the courthouse would ensue if potential liability exceeds total proceeds.

Such a race could mean unfair results as between potential plaintiffs; it could also prevent a bankruptcy court from marshaling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate.( citation omitted)

*Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 560 (1st Cir.1986)

The determination of whether the proceeds of an insurance policy are property of the estate must be analyzed in light of the facts of each case. *In re Sfuzzi, Inc.*, 191 B.R. 664, 668 (Bankr.N.D.Tex. 1996). Even though the debtors make the distinction that many of the above cited authorities are mass tort cases with a limited pool of assets in Chapter 11 reorganizations, such a distinction has no merit. Admittedly, the number of creditors in the instant case does not amount to a "mass" claimant type case, but it is clear that the proceeds of the insurance policy will not likely be sufficient to satisfy all claims. The issue of whether the proceeds of an errors and omissions insurance policy are property of a bankrupt estate has not been

directly addressed by the Eleventh Circuit. This Court is persuaded by the majority of courts ruling on this issue and holds that the proceeds of the errors and omissions policy are assets of the Taylor Agency estate.

The Debtors have also urged the Court to abstain or dismiss the case under § 305(a)(1) because the creditors have an adequate remedy under state law and the best interests of the Debtors and the creditors merit such dismissal or abstention. Having held that the insurance proceeds are property of the estate, the interests of the Debtor, the Taylor Agency, and its creditors will obviously be better served by not dismissing or abstaining from said involuntary case. The Court does not need to address whether it should dismiss or abstain from Taylor's case, because it is due to be dismissed under § 303(b)(1). The Court determines that the motion to abstain and dismiss the Taylor Agency involuntary petition pursuant to § 305(a)(1) is due to be DENIED.

If it is determined at some later date that the anticipated insurance proceeds are not forthcoming and if the Court has no insurance proceeds to administer in the estate, this Court reserves the right to address this issue again with the possibility that it may dismiss the case if it appears that there are few, if any, other assets to administer. Therefore, it is

ORDERED and ADJUDGED, that

1. The involuntary petition as to Patricia Lynn Taylor be and is hereby DISMISSED for petitioners' failing to meet the requirements under § 303(b)(1).

2. The motion of the Taylor Agency to abstain and dismiss under § 305(a)( 1) is hereby DENIED without prejudice.

3. The involuntary petition of Siuprem, Inc., Morgan Premium Finance, Inc., American Resources Insurance Company, and Premium Assignment Corporation for an order of relief against the Taylor Agency, Inc. be, and it hereby is, GRANTED.

4. The Taylor Agency, Inc. shall file with the Court its Statement of Affairs and Bankruptcy Schedules within 15 days of the date of this order.