# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

————————————————

No. 01-30747

————————————————

In the Matter of: Equinox Oil Company, Inc.,

Debtor,

————————————————

UNSECURED CREDITORS DISBURSEMENT COMMITTEE,
through its Representative Richard J. Johnston and Jonathan E. Daniel,
Liquidating Trustee for Equinox Oil Company, Inc.,

Appellee,

VERSUS

ANTILL PIPELINE CONSTRUCTION COMPANY, INC.; BURNER FIRE CONTROL, INC.;
IWC SERVICES, INC., a wholly owned subsidiary of Boots & Coots International Well Control,
Inc.; CHEVRON USA, INC.; CHRIS HANSEN, doing business and Chris' Exxon Marine
Service; EPIC DIVERS, INC.; FILCO INTERNATIONAL, INC.; GRAVEL PACK RENTAL,
INC.; GULF MARINE, INC.; HOT ENERGY SERVICES, INC., formerly known as Houma Oil
Treaters, Inc.; NEWMAN CRANE SERVICE, INC.; NEW TECH ENGINEERING AND
WELL-QUIP AND SERVICE COMPANY;  PARKER DRILLING OFFSHORE USA, LLC,
formerly known as Mallard Bay Drilling LLC; PHILLIP SERVICES / LOUISIANA INC.;
PROFESSIONAL DIVERS OF NEW ORLEANS; QUALITY WIRELINE SERVICE, INC.;
WESTERN OIL FIELDS SUPPLY COMPANY, doing business as Rain for Rent; TETRA
TECHNOLOGIES, INC.; VENTURE TRANSPORT, INC.; WELL-QUIP AND SUPPLY
CORPORATION; WEATHERFORD US, LP,

Appellants,

————————————————

In the Matter of: Equinox Oil Company, Inc.,

Debtor,

————————————————

BAKER HUGHES OILFIELD OPERATIONS, INC., doing business as Baker Oil Tools;
COMPUTALOG USA,

Appellants,

1

VERSUS

OFFICIAL UNSECURED CREDITOR'S COMMITTEE; JON DANIEL,
Liquidating Trustee (Successor to Alma Energy Corportation and
Equinox Oil Company, Inc.,

Appellees.

Appeals from the United States District Court
for the Eastern District of Louisiana

August 12, 2002

Before DAVIS, DeMOSS, STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This appeal is from decisions in two separate adversarial proceedings related to the

Chapter 11 bankruptcy of Equinox Oil Company.  In Civil Action No. 00-3320, we agree with the

bankruptcy court and the district court that a pre-existing mortgage in favor of Den norske Bank,

ASA and other banks primes liens filed by certain creditors pursuant to the Louisiana Oil Well

Lien Act.  In Civil Action No. 00-3502, we agree with the district court that the proceeds of the

debtor's well control insurance policy are included in the property of the debtor's estate.

I.

Equinox Oil Company, Inc. (Equinox) operates oil and gas leases owned by Alma Energy

Corp. (Alma).  The two companies have common ownership.  Den norske Bank, ASA,

individually and as agent for BNP Paribas and Comerica Bank - Texas (the Bank Group) loaned

over $106 million to Equinox and Alma.  The loan was secured by mortgages and other security

rights in all the assets of Alma.  Equinox incurred unpaid debts to numerous service providers in

the course of operating the leases.  These creditors filed liens pursuant to Louisiana's Oil Well

Lien Act (LOWLA) against the property securing the Bank Group mortgages.  The mortgages

and related financing statements were filed of record prior to the effective date of the LOWLA liens. In Civil Action 00-3320, the bankruptcy court and the district court agreed that the Bank Group's mortgage primed the LOWLA liens.

In September 1998, a blow out occurred at a well on an Alma lease near Port Sulfur, Louisiana. The blow out caused property damage and an oil spill. Equinox notified its insurer, National Union Fire Insurance Company (National Union) of the accident. Numerous companies provided services and equipment (the Remediation Creditors) to Equinox to stop the blowout and clean up the spill. Equinox presented a proof of loss form to National Union. National Union paid Equinox over $700,000 in partial settlement of the insurance claim related to the clean up. Equinox paid some of the assisting companies a portion of what they were owed, but failed to pay many of the Remediation Creditors.

In May 1999, Equinox was placed in involuntary bankruptcy under Chapter 7, which Equinox converted to Chapter 11. In June, 1999, Alma also filed a Chapter 11 proceeding and the bankruptcy court joined their two proceedings. In Civil Action 00-3320, the bankruptcy court and the district court agreed that the Bank Group's mortgage primed the LOWLA liens. In Civil Action 00-3502, the bankruptcy court determined that the National Union insurance proceeds were not property of the bankruptcy estate. The district court reversed. This appeal followed.

II.

As a preliminary matter, this court directed the parties to brief whether the order of the district court affirming in part and reversing in part the bankruptcy court is a final order for purposes of appeal, citing In re: Aegis Specialty Marketing Inc. of Ala., 68 F.3d 919 (5th Cir. 1995). Aegis held that an order of the district court reversing the bankruptcy court and

remanding for further proceedings is not a final appealable order. All of the parties agree, as do we, that Aegis does not apply here. In this case, the district court's order reversing the bankruptcy court did not include remand for further proceedings and all that was required in the bankruptcy court was entry of an order consistent with the district court's decision.

As a separate matter, Philip Services, one of the Remediation Creditors, argues that the district court, and therefore this court, did not have jurisdiction over the appeal of Adversary proceeding 99-1209, which is Philip Services' suit against Equinox, National Union and four banks that were secured lenders of Equinox. The district court addressed this issue in its Opinion dated June 11, 2001. We reject Philip Services' argument for essentially the reasons stated by the district court in that opinion.

## III.

In Civil Action No. 00-3320, the lien creditors argue that their liens filed pursuant to Louisiana's Oil Well Lien Act (LOWLA) are superior in ranking to the Bank Group's mortgage based on the language of the mortgage instruments, the policy of LOWLA to provide liberal protections to providers of services to oil and gas producing properties and principles of equity and unjust enrichment. These arguments must fail. LOWLA makes it clear that mortgages that are effective as to third persons before the privilege is established are superior in rank and priority to the liens. LA.R.S. 9:4870(B)(2). The creditors do not argue that their liens arose prior to the recordation of the Bank Group's mortgage. For this reason and on the basis of the district court's careful opinion on this issue dated June 11, 2001, we affirm the district court's judgment.

## IV.

The remaining issue in this appeal is whether the proceeds from Equinox's well-control

4

insurance policy are property of Equinox's bankruptcy estate. The Remediation Creditors argue that because the well-control policy covers Equinox for the cost of the work they did, the proceeds of the policy should be excluded from the bankruptcy estate and instead paid directly to them.

Section 541 of the Bankruptcy Code defines property included within the bankruptcy estate to include "all legal and equitable interests of the debtor in property as of the commencement of the case" and "proceeds . . . of or from property of the estate." 11 U.S.C. § 541(a)(1) and (6). Section 541 is read broadly and is interpreted to "include all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently specified in section 70a of the Bankruptcy Act." United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n.9, 103 S.Ct. 2309, 2313 & n.9 (1983). An insurance policy owned by the debtor is generally considered property of the estate. In re: Edgeworth, 993 F.2d 51, 55 & n.13. But, whether the proceeds of a particular insurance policy is property of the estate depends on the nature of the policy.

Two cases in this circuit have addressed this question: In re: Edgeworth; and In re: Louisiana World Exposition, Inc., 832 F.2d 1391(5th Cir. 1987). These cases are consistent in their approach. The central question when determining whether insurance proceeds associated with a policy are property of the bankruptcy estate is whether, in the absence of the bankruptcy proceeding, the proceeds of the policy would belong to debtor when the insurer pays a claim. Id. For example, in In re: Louisiana World Exposition, Inc., 832 F.2d 1391(5th Cir. 1987), this court held that the proceeds of a directors and officers liability policy were not part of the bankruptcy estate of Louisiana World Exposition, Inc. The exposition had purchased insurance policies

providing liability coverage to its officers and directors for liabilities and related legal expenses they might incur in relation to their service to the corporation. The policies also provided indemnification to LWE to the extent it might be required to indemnify the directors or officers for such legal expense or liability. The directors and officers, not LWE, the debtor, were the insureds under the policy. The court concluded that the debtor had no ownership interest whatever in the proceeds of the liability coverage as the obligation of the insurance companies was only to the directors and officers who were the only insureds.

A similar situation was addressed in In re Edgeworth, 993 F.2d 51 (5th Cir. 1993), which involved ownership of proceeds of a medical malpractice insurance policy. A plaintiff sued for medical malpractice seeking recovery from Dr. Edgeworth's insurance carrier after the debtor (the insured under the policy) had been discharged. The question was whether the discharge acted to bar the suit if the plaintiff agreed to foreswear recovery from the debtor personally and to look only to the policy proceeds. Finding that release of the debtor did not affect the liability of the insurer, the court considered whether the insurance proceeds were property of the estate. It stated:

> The overriding question when determining whether proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

Id. at 55-56. The opinion gave as examples of insurance policies whose proceeds are property of the estate, casualty, collision, life and fire insurance policies in which the insured debtor is a beneficiary. The opinion contrasted liability policies, proceeds of which would ordinarily be

6

payable only for the benefit of those harmed by the insured debtor under the terms of the insurance contract. Id. at 56. The court also observed that Dr. Edgeworth had not made a claim on the proceeds of his medical malpractice liability policy and the proceeds could not be payable to creditors other than victims of medical malpractice and their relatives. For these reasons, the court concluded that proceeds of Dr. Edgeworth's liability policy were not property of the Chapter 7 estate. See also In re Vitek, Inc., 51 F.3d. 530 (5th Cir. 1995).

Commentary on this issue is consistent with the position taken in these two opinions. Collier Bankruptcy Manual, at section 541.11, notes that "[i]t is well established that money payable as the proceeds of a fire policy taken out before bankruptcy for the debtor's benefit does not arise from the property, but from a personal contract between insurer and insured." Accordingly, the proceeds of such a policy are property of the estate rather than awarded to a creditor holding a lien on the property, in the absence of a "loss payable" rider or other contractual modifications.

Applying these decisions to our case, we are satisfied that the proceeds of the National Union policy are property of the bankruptcy estate. The policy names the debtor as the assured. Under the terms of the policy, the underwriter agrees "to reimburse the Assured" for expenses incurred in relation to well blowouts, including costs to extinguish fires and to regain control of the well. In other words, the policy provides coverage for losses of the bankrupt corporation itself and provides for payment of those losses to Equinox. LWE, 832 F.2d at 1399-1400. Clearly this policy falls within the class of "estate, casualty, collision, life and fire insurance policies" identified in Edgeworth in which the debtor is the beneficiary. Edgeworth, 993 F.2d at 56. National Union's policy is particularly analogous to a standard fire policy which is designed

7

to reimburse the insured for repairs to his structure after a fire. The Remediation Creditors had no rights under the policy to claim its proceeds.

The Remediation Creditors argue that they provided the services to stop the blow out and clean up its after-effects - which is the basis of Equinox's claim against National Union - and that it is unfair to lump them with all other general creditors whose claims are unrelated to the insurance coverage. This argument has an equitable tug, but without more cannot prevail. The Remediation Creditors are like other unfortunate creditors whose debts are owed but who cannot establish a priority under state law or the bankruptcy code to advance their priority over other general creditors. For example, a bank making an unsecured loan to the debtors to conduct the cleanup or a supplier which sold clean-up supplies to the debtor would be in the same position as the Remediation Creditors. Also, the Remediation Creditors could have protected themselves by insisting that Equinox obtain from National Union a "loss payee" endorsement in their favor before commencing their work, thereby protecting their right to policy proceeds.

In summary, we agree with the district court that the proceeds of the National Union policy belong to the bankruptcy estate. The policy protects Equinox from losses resulting from loss of control of a well. The policy is not designed to protect losses of third parties, like the directors and officers in LWE or the patient in Edgeworth.

V.

Accordingly, the judgment of the district court is affirmed and this case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

AFFIRMED. REMANDED.