The CITIZENS NATIONAL BANK
OF EVANSVILLE, Appellant
(Plaintiff Below),

v.

Roland B. FOSTER, Jr. and Carolyn
J. Foster, Appellees (Defendants
Below).

No. 82S00–9408–CQ–760.

Supreme Court of Indiana.

Aug. 7, 1996.

Terry G. Farmer, Marjorie A. Meeks, Bamberger, Foreman, Oswald & Hahn, Evansville, for Appellant.

Pamela Carter, Attorney General, Arend J. Abel, Special Counsel, Office of the Attorney General, Indianapolis, for the State.

Theodore J. Nowacki, Bose McKinney & Evans, Indianapolis, for Amicus Curiae, Indiana Ass'n of Life Ins. Companies regarding certified questions.

David J. Bodle, Mark A. Drummond, Henderson Daily Withrow & Devoe, Indianapolis, Ross E. Rudolph, Mattingly Rudolph Fine & Porter, Evansville, for Appellee.

Karl L. Mulvaney, Thomas C. Scherer, Gary R. Welsh, Bingham Summers Welsh & Spilman, Indianapolis, for Amici Curiae, Community Bankers Assn. of Indiana, Inc. and the Indiana League of Savings Institutions, Inc.

Thomas H. Ristine, Ice Miller Donadio & Ryan, Indianapolis, for Amicus Curiae, the Indiana Bankers Assn., Inc.

SHEPARD, Chief Justice.

Today we revisit the constitutionality of statutes exempting a debtor's property from the pool of assets available to creditors. In *Matter of Zumbrun* 626 N.E.2d 452 (Ind. 1993), we held that the Indiana Constitution requires that the legislature fashion such exemptions in reasonably tangible ways designed to balance the interests of debtors and lenders. This certified question involves application and re-examination of that decision.

### I. History of the Case

On November 30, 1993, Carolyn J. Foster and her husband Roland B. Foster, Jr. voluntarily filed a petition for relief from their debts under Chapter 11 of the United States Bankruptcy Code. When a debtor reorganizes her assets to discharge her debts, the Bankruptcy Code allows the debtor to exempt from the bankruptcy estate certain types and amounts of property. 11 U.S.C. § 522. Subsection 522(b) of the Code also permits states to substitute their own set of exemptions for the federal exemption scheme, and Indiana has done so. Ind.Code Ann. § 34–2–28–0.5 (West 1983).[1]

Among the assets the Fosters sought to keep for themselves—and thereby exempt from seizure by their creditors—was the cash surrender value of a life insurance policy purchased less than two weeks before they filed for bankruptcy. They also sought to exempt their Individual Retirement Accounts (IRAs), to which they had made annual contributions from 1981 through 1989. Both forms of exemption are exempt by state law. Code §§ 34–2–28–1(a)(6) (West Supp. 1996) (IRAs); 27–1–12–14(c) (West 1993) (insurance policies). Nevertheless, the United States Trustee and an unsecured creditor, Citizens National Bank of Evansville ("Citizens"), objected to exempting the life insurance, citing *Zumbrun.* Citizens also objected to exemption for the IRAs on the same grounds.

The Bankruptcy Court refused to exempt the life insurance policy, but allowed the Fosters to exempt their IRAs. *In re Foster,* 168 B.R. 183 (Bankr.S.D.Ind.1994). In doing so, the bankruptcy judge said that *Zumbrun* had raised questions about settled law[2] and recommended possible certification to this court. Citizens and the Fosters each appealed to the U.S. District Court for the Southern District of Indiana, Evansville Division.

---

1. Indiana Code § 34–2–28–1 contains Indiana's list of exemptions and their limitations. The life insurance exemption appears in Title 27.

2. Of course, a different bankruptcy judge of the Southern District had presaged our *Zumbrun* decision, holding a statute exempting assets in a retirement plan unconstitutional under Section 22. *In re Garvin,* 129 B.R. 598 (Bankr.S.D.Ind. 1991).

The District Court consolidated the appeals and, pursuant to Ind. Appellate Rule 15(O), certified the following two questions to this Court:

1. Whether I.C. 27–1–12–14(c) violates Article 1, Section 22 of the Indiana Constitution by failing to impose a cap on the exemptible amount. Alternatively, if such statute is not unconstitutional by virtue of failing to set forth a maximum exemptible amount, whether such statute violates the Indiana Constitution because the extent of the exemption allowed is unrelated to Debtors' requirements to "enjoy the necessary comforts of life" under Article 1, Section 22 of the Indiana Constitution.

2. Whether I.C. 34–2–28–1(a)(6) as amended violates Article 1, Section 22 of the Indiana Constitution by failing to impose a cap on the exemptible amount. Alternatively, if such statute is not unconstitutional by virtue of failing to set forth a maximum exemptible amount, whether such statute violates the Indiana Constitution because the extent of the exemption allowed is unrelated to Debtor's requirements to "enjoy the necessary comforts of life" under Article 1, Section 22 of the Indiana Constitution.

Answering these questions requires us to ask whether the caps on the amount of exemption found in some statutes are constitutional. This is a relatively easy inquiry. By contrast, the constitutionality of statutes without caps essentially calls for a re-examination of *Zumbrun*. This is a more difficult task, especially when raised in a certified question.

## II. New Exemptions and the Zumbrun Decision

In 1990, the legislature amended Indiana's bankruptcy exemption statute to shield "[a]n interest the judgment debtor has in ... an individual retirement account...." P.L. 171–1990, Sec. 4, 1990 Ind. Acts 2203 (codified at Ind.Code Ann. § 34–2–28–1(a)(6) (West Supp.1991)). When debtors Brian Lee

Zumbrun and Judy Kay Zumbrun filed for bankruptcy the following year, they sought to invoke this new provision to protect from creditors the $3600 in their individual retirement accounts. The bankruptcy trustee's objection to the unlimited exemption for IRAs prompted a certified question to this Court from the federal court, which in turn led to our interpretation of Article I, Section 22 of the Indiana Constitution in *Zumbrun*.

In resolving that case, we recognized that the American democracy has long struggled with balancing the creditor's interest in being repaid against the debtor's interest in leading a self-sufficient, productive life. American bankruptcy laws have typically attempted to protect both the property rights of creditors and society's interest in allowing a debtor to keep enough property so as not to become a public charge. Though our English common law tradition includes debtors' prison, from the earliest days of our Republic penal sanctions for failing to satisfy all obligations due were sharply curtailed or abolished altogether.[3] Consistent with this policy, the drafters of the Indiana Constitution of 1851 gave us Article I, Section 22:

> "The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted; and there shall be no imprisonment for debt, except in case of fraud."

The exemption clause of Section 22 affords the legislature nearly total discretion to determine the amount of exemptible property, subject only to the constraint that the amount be reasonable. As we acknowledged in *Zumbrun*, the drafters of Section 22 intentionally omitted language specifying how much should be exempt in order to allow legislators the flexibility to redefine over time what is reasonable. The State now argues[4] that this ambiguity in Section 22

---

**3.** *See, e.g.,* IND. CONST. of 1816, art. I, § 17 ("The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison, after delivering up his estate, for the benefit of his creditor, or creditors, in such manner as shall be prescribed by law.").

**4.** Though invited by the Court in 1993 to submit a brief in *Zumbrun*, the State declined to participate. The legislature had by that time amended the exemption statute to its current form, apparently leading the State to believe that it had "no

effectively means the legislature has carte blanche when it comes to keeping a debtor's assets out of the hands of creditors. Yet, even under the highest level of deference to the General Assembly's decision to allow bankrupt individuals to retain any money in an IRA, the *Zumbrun* Court could not reconcile an unlimited exemption with the balanced approach required by Section 22's modest dictate that the amount set by the legislature be reasonable.

In the instant case, the Fosters and the State both suggest that whatever balancing of interests between creditors and debtors may be found in our state constitution, Section 22 addresses only one side of that balance: protection for debtors. Taking exception to our holding in *Zumbrun*, they observe that the language of the clause imposes a positive directive and nothing more: the legislature must provide at least some exemption for a debtor's property to ensure that the collection of debt does not turn debtors into wards of the state.

We remain convinced that Article I, Section 22 necessarily implicates both sides of the debtor-creditor relationship. The drafters of this provision clearly contemplated *some* cap. By allowing debtors "to closet virtually every liquid asset"[5] from creditors under the superseded exemption statute the legislature had not only exceeded the scope of its constitutional mandate, but obliterated whatever slim protection creditors enjoyed by virtue of Section 22's reasonableness requirement.

### III. The Exemption for IRAs

Even before our opinion in *Zumbrun*, the legislature amended the Indiana Code to place a limit on the allowable exemption for IRAs. The amended version of § 34–2–28–1(a)(6) links the exempted amount of the debtor's interest in a "retirement plan"[6] to federal income tax law. If the contributions made to the retirement account is not subject to federal income tax, then those contributions and any interest they accrue are similarly not subject to judgment by creditors. Citizens maintains that the treatment of IRAs under the amended statute still fails under our *Zumbrun* analysis, to wit: linkage to federal tax deductibility does not set any upper limit on the exemptible amount, nor is such a linkage reasonably related to the Fosters' enjoyment of the necessary comforts of life.

Congress created IRAs to promote savings. For taxpayers below a certain income level, contributions to an IRA reduce dollar for dollar the taxpayer's taxable income by up to $2,000 annually. To encourage taxpayers to accumulate assets for retirement, contributions to a qualifying retirement account are not taxed until they are withdrawn, which often occurs when the taxpayer is paying a lower marginal tax rate. Even if the rate is the same, the taxpayer still enjoys the benefits of accumulating interest on the untaxed income, deferring the tax owed until the money is withdrawn. In 1986, Congress capped the income level allowable for the tax deferral that made IRAs an attractive investment vehicle.[7] Even though the federal tax deduction was capped at $2,000, however, there was no limit on the amount a person could deposit. The net effect on Indiana's prior statute, therefore, was not to limit the amount of assets one could protect from creditors by shifting as much property as possible into an IRA.

■ The present Indiana statute does not contain its own cap on exemptible amount but it makes explicit reference to an amount certain and readily ascertainable in the Internal Revenue Code.[8] This is a reasonably tangible way to describe the amount of the exemption, and therefore complies with Section 22. *Zumbrun*, 626 N.E.2d at 454.

---

present interest" in our consideration of the trustee's constitutional·challenge.

**5.** *Zumbrun*, 626 N.E.2d at 455.

**6.** Defined in § 34–2–28–1(e)(3) (West Supp.1994) to include an individual retirement account "that is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as amended."

**7.** Tax Reform Act of 1986, Pub.L. No. 99–514, § 1101, 100 Stat.2085, 2411 (1986).

**8.** See *id.*

■ Citizens also asserts that the statutory cap does not comply with Section 22 because the State has not demonstrated that the limited exemption is reasonably related to a debtors' enjoyment of "the necessary comforts of life." Lacking an objective definition of what is considered necessary, we accord a high degree of deference both to the legislature's identification of various types of property debtors may keep despite their failure to pay their debts, and to the limits the legislature selects within each type of property. So long as the legislature articulates some limitation, it is the burden of the party seeking to invalidate a statutory exemption to demonstrate that the limitation does not go far enough for constitutional purposes. *Cf.* Bankruptcy Code § 522(c) and comment to the Collier's 1995 Pamphlet Edition, Part 1, at 459. Thus, Citizens must overcome the presumption that pegging the amount of the exemption for IRAs to the limited federal income tax deduction is sufficiently related to the debtors' enjoyment of "the necessary comforts of life." It has failed to meet this burden.

## IV. The Problem With Certified Questions and Constitutional Issues

Answering the question concerning exemption for life insurance leads us to two problems with certified questions involving constitutional claims.

■ First, certified questions almost inevitably conflict with the longstanding policy of judicial restraint in constitutional matters. Both state and federal courts traditionally foreswear deciding a constitutional question unless no non-constitutional grounds present themselves for resolving the case under consideration. As our Court said in the last century:

"[C]ourts will not pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause. This court has repeatedly held that questions of this character will

not be decided unless such decision is absolutely necessary to a disposition of the cause on its merits."

*State v. Darlington*, 153 Ind. 1, 4, 53 N.E. 925, 926 (1899). As Justice Brandeis observed in *Ashwander v. Tennessee Valley Authority*, "[C]onsiderations of propriety, as well as long-established practice, demand that we refrain from passing upon the constitutionality of an act of Congress unless obliged to do so in the proper performance of our judicial function. . . ." 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

■ This doctrine of strict necessity flows from "the unique place and character, in our scheme, of judicial review of governmental action for constitutionality." *Rescue Army v. Municipal Court*, 331 U.S. 549, 571, 67 S.Ct. 1409, 1421, 91 L.Ed. 1666 (1947). *See generally* Ronald D. Rotunda & John E. Nowak, 1 Treatise on Constitutional Law: Substance and Procedure § 2.13(g) (2d ed. 1992); 16 C.J.S. § 88. Yet in this case the certified question arises even though there exist other unresolved non-constitutional grounds on which the case might be resolved.[9]

■ The second problem with addressing constitutional claims presented by a certified question is that such questions tend to separate the constitutional claim from the specifics of the case. Like the strict necessity rule, a requirement that courts not speculate about hypothetical applications of a statute challenged on constitutional grounds helps ensure that the court's ruling is based only on issues which were fully vetted by the adversarial process and accords the deference due to "the judgment of other repositories of constitutional power concerning the scope of their authority." *Rescue Army*, 331 U.S. at 571, 67 S.Ct. at 1421. This policy is sometimes expressed in terms of an institutional aversion to constitutional adjudication in the abstract. "If a record is concrete rather than abstract in nature, the Court may find a way of interpreting the statute to avoid or minimize the constitutional issue.

---

**9.** For example, the question of whether the timing of the Roland Foster's purchase of the life insurance policy constituted a fraudulent conveyance is highly relevant to the ultimate outcome of this case.

The statute may be interpreted to raise constitutional problems *as applied to some issues and not to others.*" Rotunda & Nowak, 1 Treatise. § 2.13(d) at 189 (emphasis added). Certified questions often put us in just such a speculative position because the questions' terms typically require us to examine the validity of each statute on its face. This was particularly a problem in litigating *Zumbrun,* where the parties to the case filed minimal briefs.

Though we announced a bright-line rule in *Zumbrun,* that a statute lacking a limit on the exemptible amount is unconstitutional on its face, such an approach is not consistent with our preference for reviewing the constitutional validity of statutes as they are applied to particular parties in a case before us. If this were not a federal question, our analysis would focus first on potentially dispositive non-constitutional issues before turning to the constitutionality of the two statutes' application to the Fosters. Though presented in a particular factual context, the two questions before us require facial interpretation only, which not only prevents our review of otherwise relevant issues, but demands a sweeping pronouncement of the statutes' constitutionality regardless of the factual setting. Application of the law to case-specific facts has always been relevant to this Court's constitutional jurisprudence, and though our consideration of certified questions promotes the accurate application of state law in federal courts, we also acknowledge the shortcomings of such proceedings.

## V. The Exemption for Life Insurance Policies

We agree with the bankruptcy judge that on its face § 27–1–12–14(c) allows debtors to shield an unlimited amount of assets in a life insurance policy or policies. As such it potentially runs afoul of Article 1, Section 22 of the Indiana Constitution.

■ Indiana Code section 27–1–12–14(c) mandates that life insurance policies naming the insured's spouse as the beneficiary are "free and clear from all claims of the creditors of such insured person or of the person's spouse." The statute contains no limit, and would therefore fail under strict *Zumbrun* analysis. As suggested above, however, declaring every limitless exemption statute to be unconstitutional per se deprives this Court of its longstanding tools for constitutional adjudication. While we stand by the principle first enunciated in *Zumbrun* that Section 22 of Indiana's Constitution limits the ability of the legislature to exempt property from the bankruptcy estate, and statutes containing no upper limit remain constitutionally suspect, we conclude that the identification of an upper limit or lack thereof standing alone should not be dispositive. Rather, courts must delve into to admittedly murkier waters of reasonable necessity.

■ Thus, a minor amount of cash value (like the $3600 in *Zumbrun* ) built up over time in a life insurance policy cannot be said to violate Section 22 as "never being capable of constitutional application." By contrast, substantial sums closeted in anticipation of bankruptcy do not fit with the "necessary comforts of life" purpose of the Indiana Constitution and a claimant must demonstrate that they do so in order to claim the exemption.

## Conclusion

The statutory exemption on IRAs is constitutional. The exemption for life insurance is constitutionally suspect and may be claimed only upon proof that the exemption is required to afford the "necessities of life."

DeBRULER and SELBY, JJ., concur.

SULLIVAN, J., concurs with separate opinion.

DICKSON, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Justice, concurring.

Although I dissented in *Matter of Zumbrun,* 626 N.E.2d 452, 456 (Ind.1993) (Sullivan, J., dissenting), I consider the interpretation of Article I, § 22, of the Indiana Constitution *stare decisis* for purposes of this opinion and for that reason concur.

DICKSON, Justice, concurring in part and dissenting in part.

To the extent that the majority opinion concludes that the exemption provided by

Indiana Code §§ 34–2–28–1(a)(6) does not violate Article I, Section 22, of the Indiana Constitution, I concur in the result. However, I dissent from the majority's conclusion that the exemption for life insurance benefiting an insured's spouse is "constitutionally suspect" and may extend only to the "necessities of life." With its decision today, the majority has exposed to creditors' claims the life insurance benefits of most Indiana families, contrary to the express language and intent of the legislature and contrary to the expectations of policyholders and insurance companies alike.

Such a result is not compelled by the clear language of Article I, Section 22: "The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." I remain convinced that these words require the enactment of *minimum* reasonable exemption laws but do not "impose any maximum limitation upon the power of the Indiana General Assembly to enact generous exemption laws." *Matter of Zumbrun*, 626 N.E.2d 452, 455 (Ind.1993) (Dickson, J., dissenting). We should interpret this provision in accordance with its clear and unambiguous language as understood by the 82,564 citizens who ratified it rather than to superimpose upon it the strained *Zumbrun* construction, which is based merely on present-day speculation about the public policy motives of a few of the delegates to the 1850–51 Constitutional Convention.

In response to the certified questions, I would hold that neither the life insurance exemption nor the IRA exemption violates Article I, Section 22 of the Indiana Constitution.