**In re: the Marriage of: Thomas E. JONES, Jr., Appellant–Petitioner,**

v.

**Tammy U. JONES, Appellee–Respondent.**

**No. 49A02–0501–CV–64.**

Court of Appeals of Indiana.

Aug. 17, 2005.

Kenneth J. Falk, Indiana Civil Liberties Union, Alisa G. Cohen, Indianapolis, IN, for Appellant.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Thomas E. Jones (Father), appeals the trial court's Decree of Dissolution of Marriage (the Decree).

We affirm, but order that subparagraph 10(j) be stricken from the Decree.

### ISSUE

Father raises two issues on appeal, but we find one issue dispositive: whether the trial court lacked authority to order that divorcing parents, who are practicing Wiccans, take steps to shelter their child from involvement in and observation of "these non-mainstream religious beliefs and rituals." (Appellant's App. p. 9).

### FACTS AND PROCEDURAL HISTORY

Father and Tammy U. Bristol (Mother) were married on February 1, 1995, and have one child, who was born on July 8, 1995. Both parents practice Wicca, a form of paganism.

On May 15, 2003, Father filed a petition for dissolution of marriage. On July 29, 2003, a licensed clinical social worker with the Domestic Relations Counseling Bureau of the Circuit and Superior Courts of Marion County interviewed both parents in order to prepare and submit a report advising the trial court on appropriate custody and parenting time arrangements (DRCB Report). On February 3, 2004, the trial court conducted a hearing on Father's petition. During the hearing, the trial court stated, "[I]n going through this DRCB Report, there are a lot of issues that we have not touched upon yet."

(Transcript p. 24). The trial court then questioned Father at length on the nature of Wicca and its rituals.

On February 13, 2004, the trial court issued its Decree of Dissolution of Marriage, ordering that the parents were to have joint legal custody, but Father was to be the child's custodial parent. In its Decree, the trial court also ordered, *sua sponte*, in subparagraph 10(j), "[t]hat the parents are directed to take such steps as are needed to shelter [the child] from involvement and observation of these non-mainstream religious beliefs and rituals." (Appellant's App. p. 3).[1]

On March 15, 2004, Father filed his Verified Joint Motion to Correct Error, in which Mother joined, requesting that the trial court strike subparagraph 10(j) from the Decree. On September 21, 2004, the trial court conducted a hearing on the motion. The trial court denied the motion on November 18, 2004.

Father now appeals.[2] Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Father presents two constitutional arguments in support of his request that we strike subparagraph 10(j) from the trial court's Decree. As a general matter, we acknowledge that "[p]arents have a constitutionally recognized fundamental right to control the upbringing, education, and religious training of their children." *Swartz v. Swartz*, 720 N.E.2d 1219, 1222 (Ind.Ct. App.1999) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). However, in accordance with our longstanding policy of judicial restraint in constitutional matters, this court must refrain from deciding constitutional questions unless no non-constitutional grounds present themselves for resolving the case under consideration. *See, e.g., Citizens Nat'l Bank of Evansville v. Foster*, 668 N.E.2d 1236, 1241 (Ind.1996).

It is well established that the trial court has statutory authority to determine custody and enter a custody order in accordance with the best interests of the child. *See* Ind.Code § 31–17–2–8. Further, in determining the best interests of the child, the trial court shall consider all relevant factors, including the age and sex of the child, the child's adjustment to the child's home, school, and community, and the mental and physical health of all individuals involved. *See id.* Here, Father does not challenge the trial court's custody determination; instead, he challenges the trial court's imposition of a requirement in the parents' divorce decree that he and Mother shelter their child from their "non-mainstream religious beliefs and rituals." (Appellant's App. p. 9). We find that this case can be resolved on statutory, rather than constitutional, grounds. *See Foster*, 668 N.E.2d at 1241.

Indiana Code section 31–17–2–17 provides as follows:

(a) Except:

(1) as otherwise agreed by the parties in writing at the time of the custody order; and

(2) as provided in subsection (b);

the custodian may determine the child's upbringing, including the child's education, health care, and religious training.

(b) If the court finds after motion by a noncustodial parent that, in the absence

---

1. The trial court mistakenly numbered what should have been paragraph 11 in the Decree as paragraph 10. However, the challenged portion of the Decree appears in the properly numbered paragraph 10.

2. Mother joined in Father's Verified Joint Motion to Correct Error, and she has not filed an appellee's brief; nevertheless, she is the nominal Appellee in this matter.

of a specific limitation of the custodian's authority, the child's:

> (1) physical health would be endangered; or
>
> (2) emotional health would be significantly impaired;
>
> the court may specifically limit the custodian's authority.

Thus, the statute expressly reserves for the custodial parent the authority to determine his child's upbringing, which includes religious training, unless otherwise agreed by the parties in writing at the time of the custody hearing. Ind.Code § 31–17–2–17. The statute also provides a mechanism for limiting the custodial parent's authority in this regard—following motion by the non-custodial parent, the trial court may limit the custodial parent's authority if the trial court finds that the absence of a specific limitation would endanger the child's physical health or significantly impair the child's emotional development. *See id.; see also Clark v. Madden,* 725 N.E.2d 100, 105 (Ind.Ct.App.2000) (finding that it was impermissible for the trial court to place a restriction on the custodial parent without a specific finding that the child would be endangered absent the restriction).

Here, the record reveals that during the final dissolution hearing, the trial court stated the following:

> All right, while the two of you are free to engage in any kind of behaviors you want to that are lawful, or that you don't get caught at, I suppose, where you've got a child involved, that freedom can be somewhat limited. All right? And in going through this DRCB Report, there are a lot of issues that we have not touched upon yet. First of all I want to get some information and I'll start with you, sir, from your religion, and how exactly that is practiced and what implication that has on the child. To the extent the child is part of that practice.

(Tr. p. 24). The trial court then asked Father to elaborate on what his Wiccan rituals consist of and where they take place. During this questioning, the following colloquy occurred:

> [Father]: The rituals that are part of what my group does ... consist of—we start out with a grounding and a centering, which is where we stand with our minds. We relax. We gain some focus. Then we create—the best way to put it is—entities, but that's not really symbols of the elements, the east, south, west and north, representing thought, passion, emotion and intuition, as well as stability. And then we ask for divine intervention. And then we do guided meditations. After that is gone through, then we sometimes chant or drum. Then we share bread and pass with us—juice or water—and then say good bye and thank you to all those entities, characteristics that we've asked to come into our lives. That's how one of our rituals go.
>
> [Trial court]: All right, where do you practice—is there a location in which this is done in a group.
>
> [Father]: It varies. Sometimes it's outdoors. Sometimes it's in parks. Sometimes it's on private property. Sometimes it's in homes.

(Tr. pp. 24–25). At one point during its questioning of Father, the trial court remarked, "[P]eople might think that you worship to Satan." (Tr. p. 25). Father responded, "I can't worship something if I don't believe in it." (Tr. p. 25).

The trial court also questioned Mother, asking, "Do you practice the same—my understanding is you have the same beliefs ...." (Tr. p. 29). Mother replied, "I have a similar belief system, but I do not involve [the child]." (Tr. p. 29).

Following the hearing, the trial court issued its Decree, ordering therein that

"the following specific term[ ] shall [ ] apply to both parties: ... [10(j) ] That the parents are directed to take such steps as are needed to shelter [the child] from involvement and observation of these non-mainstream religious beliefs and rituals[.]" (Appellant's App. p. 9). Although the trial court does not specify what is meant by "these non-mainstream religious beliefs and rituals," we can infer that this refers to the Wiccan beliefs and rituals discussed by both parents in their testimony. The trial court's inclusion of this term in the Decree would appear to reflect the judge's personal opinion of the parties' Wiccan beliefs and rituals.

The record clearly establishes, however, that the parties did not proffer a written agreement regarding their child's upbringing and that neither party moved to limit the authority of the other to determine their child's religious training. *See* I.C. § 31–17–2–17. In fact, Mother, whom the Decree named as the noncustodial parent, is also a practicing Wiccan and joined in the motion to correct error filed by Father after the Decree was issued. In light of the statutory authority explicitly granted to Father by Indiana Code section 31–17–2–17, and absent a finding by the trial court that a specific limitation of Father's authority is necessary to prevent endangerment to the child's physical health or significant impairment of his emotional development, we find that the trial court lacked the authority to specifically limit the parents' ability to direct their child's religious .training. Thus, we order that subparagraph 10(j) be stricken from the Decree.

## CONCLUSION

Because the trial court did not find that a limitation on Father's parental authority to determine the religious training of his child was necessary to prevent endangerment to the child's physical health or significant impairment of the child's emotion-

al health, we hold that the trial court abused its discretion in ordering the parents to shelter the child from involvement in and observation of "these non-mainstream religious beliefs and rituals[.]" (Appellant's App. p. 9). We therefore order that subparagraph 10(j) be stricken from the Decree, but we affirm the Decree in all other respects.

Affirmed, but ordered that subparagraph 10(j) be stricken from the Decree.

SULLIVAN, J., and NAJAM, J., concurs.