In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-1335

IN RE:

    DAVID A. STINNETT,

*Debtor.*

DAVID A. STINNETT,

*Debtor-Appellant,*

        *v.*

R. STEPHEN LAPLANTE,

*Trustee-Appellee.*

No. 05-1733

IN RE:

    DAVID A. STINNETT,

*Debtor.*

DAVID A. STINNETT,

*Debtor-Appellant,*

        *v.*

R. STEPHEN LAPLANTE, Trustee,
UNITED STATES OF AMERICA, and
GUARDIAN LIFE INSURANCE COMPANY,

*Appellees.*

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
Nos. 3:03-CV-168-RLY-WGH and
3:03-CV-116-RLY-WGH—**Richard L. Young**, *Judge.*

ARGUED NOVEMBER 10, 2005—DECIDED SEPTEMBER 27, 2006

Before FLAUM, *Chief Judge*, and RIPPLE and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.*    In 1995 David Stinnett was diagnosed as suffering from depression and as a result has been collecting substantial monthly benefits from two different policies of long-term disability insurance. In 1996, and again in 1997, the Internal Revenue Service made assessments against Stinnett for unpaid federal income taxes. In May 2000 Stinnett filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code, and a dispute soon erupted between Stinnett, the Bankruptcy Trustee, and the IRS as to entitlement to the disability insurance payments. In several appeals taken from rulings by the bankruptcy court, the district court concluded that the disability payments are property of the bankruptcy estate, that the government's tax lien attached to these payments, and that Stinnett is entitled to an exemption of $6000 per month under Indiana law. Stinnett has filed two separate appeals from the orders of the district court, which we have consolidated for decision. We agree with the district court's conclusion that the disability payments are property of the bankruptcy estate and also that Stinnett is entitled to exempt only $6000—not 100%—of the disability payments. Because the disability payments are property of the bankruptcy estate, Stinnett lacks standing to raise the tax lien issue on appeal.

## I.  Background

David Stinnett worked for Northwestern Mutual Life Insurance Company ("Northwestern") for twenty-three years and was covered by long-term disability insurance issued by that company. In 1994 Stinnett's employment with Northwestern was terminated. Shortly thereafter, on November 1, 1994, he commenced employment as a salesman for Guardian Life Insurance ("Guardian"). At that

time, he became covered by a policy of disability insurance issued by Guardian. In September 1995 Stinnett sought treatment for and was diagnosed as suffering from depression. He applied for benefits under the Northwestern disability insurance and began receiving monthly payments of approximately $11,400 from Northwestern beginning in September 1995.

Despite receiving these payments from Northwestern, Stinnett continued his employment and received a salary from Guardian for approximately the next five years. He did not seek disability benefits under the Guardian policy during this period because he was financially better off remaining an employee and receiving a salary.

During the five-year period Stinnett was employed by Guardian, the IRS made two assessments for unpaid income tax relating to the 1995 and 1996 tax years.[1] When the assessments went unpaid, the IRS filed notices of federal tax liens regarding these liabilities pursuant to 26 U.S.C. § 6321.[2] On May 26, 2000, Stinnett filed a petition in bankruptcy court under Chapter 7. Four days later he stopped working for Guardian. The IRS filed a proof of claim with the bankruptcy court for Stinnett's unpaid federal income tax liability.

In July 2001, over a year after his employment ceased and his bankruptcy petition was filed, Stinnett submitted

---

[1] The 1995 tax year assessment (made on June 3, 1996) for unpaid federal income tax was in the amount of $511,872.69, and the 1996 tax year assessment (made on June 2, 1997) was in the amount of $282,440.83.

[2] This section provides in pertinent part: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

a disability claim to Guardian seeking benefits retroactive to September 13, 1995 (apparently the date he was deemed disabled by depression for purposes of the Northwestern policy). Guardian denied his claim for the period during which he had been receiving a salary from the company, relying on a provision in the policy providing that an insured is not entitled to benefits "for any day of disability during which the Employee performs work for remuneration or profit . . . ." Guardian did, however, honor Stinnett's claim going forward from the date of his termination of employment. In October 2001 Guardian granted Stinnett long-term disability benefits of approximately $10,300 per month, backdated to June 1, 2000 (the date on which he ceased receiving a salary from Guardian). Accordingly, since October 2001 Stinnett has been receiving payments from both Northwestern and Guardian in a combined monthly total of approximately $21,700.

In the course of the bankruptcy action, the Trustee commenced an adversary proceeding seeking to establish that the Guardian disability payments were assets includable in the bankruptcy estate and that the payments should consequently be turned over to the Trustee. The IRS intervened, seeking to establish that its federal tax lien attached to the payments. In the main bankruptcy case, Stinnett and the Trustee litigated the extent to which Stinnett was entitled to an exemption from the bankruptcy estate for the disability payments from both Guardian and Northwestern.

On appeal of several orders of the bankruptcy court, the district court held that (1) the bankruptcy court properly concluded that the Guardian disability payments are property of the bankruptcy estate, despite the fact that Stinnett did not begin receiving them until after his bankruptcy petition was filed; (2) the government's tax lien attached to these payments because the timing of their

receipt (prepetition or postpetition) was within Stinnett's control; and (3) the bankruptcy court properly concluded that Stinnett was entitled to exempt $6000 per month of his combined disability payments—not 100%, as he claimed—from the bankruptcy estate under Indiana law.

## II. Discussion

### A. Property of the Bankruptcy Estate

The threshold issue is whether the Guardian disability payments, for which Stinnett did not file a claim until after the petition was filed, are includable as property of the bankruptcy estate. The applicable statutory definition provides in pertinent part that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," plus "[p]roceeds . . . or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case," and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1), (6) & (7) (2004).

As a general matter, insurance contracts in which the debtor has an interest at the time the petition is filed constitute property of the estate for purposes of § 541(a). *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir. 1989) ("A policy of insurance is an asset of the [bankruptcy] estate . . . ."); *see also Am. Bankers Ins. Co. v. Maness*, 101 F.3d 358, 362 (4th Cir. 1996) ("[D]ebtors' insurance policies clearly constitute 'interests' under § 541(a) of the Bankruptcy Code."); *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986); *Ford Motor Credit Co. v. Stevens (In re Stevens)*, 130 F.3d 1027, 1029 (11th Cir. 1997); *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993) ("courts are generally in

agreement that an insurance policy will be considered property of the estate").

Further, payments from insurance policies in which the debtor had a prepetition interest, to the extent that the debtor has or would have a right to receive and keep those payments when the insurer paid on a claim, are "proceeds" of estate property and thus also property of the estate. *In re Edgeworth*, 993 F.2d at 55; *Am. Bankers Ins. Co.*, 101 F.3d at 364; *In re Stevens*, 130 F.3d at 1029. As explained by the Fifth Circuit:

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.
>
> . . . Proceeds of such insurance policies, if made payable to the debtor rather than a third party such as a creditor, are property of the estate and may inure to all bankruptcy creditors.

*In re Edgeworth*, 993 F.2d at 55-56 (footnotes omitted). Therefore, because Stinnett held a prepetition interest in the Guardian policy, and also had the right to receive and keep the proceeds of the policy at the time the insurer paid on the claim, the Guardian payments are property of the bankruptcy estate under § 541(a).

On appeal, Stinnett does not raise a serious objection to this analysis and instead argues that his disability payments should fall within the exception contained in § 541(a)(6), which provides that "earnings from services

performed by an individual debtor after the commencement of the case" are not property of the bankruptcy estate. Stinnett contends that his payments fall within this exception because his entitlement to disability payments is predicated on his inability to obtain "earnings from services performed," and disability payments, by their very nature, are intended to be a *substitute* for earned wages. So, the argument goes, the disability insurance payments are the equivalent of "earnings from services performed" and are thus excepted from property of the estate.

We cannot agree. Disability payments may be intended to substitute for wages, but they are available only when the policyholder is *incapable* of "performing services" in exchange for compensation, a necessary element of the exception under § 541(a)(6). Further, case law provides that the postcommencement earnings exception should be interpreted "extremely narrowly" and "excepts only earnings from services actually performed by an individual debtor." *In re Prince*, 85 F.3d 314, 323 (7th Cir. 1996). In light of this rule of construction and the plain language of the statute, earnings obtained solely by virtue of the *inability* to perform services cannot be considered the legal equivalent of "earnings from services performed." We therefore agree with the district court and the bankruptcy court that the Guardian disability payments are property of the estate under § 541(a).

## B.  State Law Exemption

The Bankruptcy Code provides, in 11 U.S.C. § 522, that notwithstanding the provisions of § 541(a), an individual debtor in a bankruptcy proceeding may exempt certain property from the bankruptcy estate as enumerated in § 522. Alternatively, § 522(b) permits a state to "opt out" of the federal exemption scheme and provide its own list

of exemptions. Indiana, the relevant state for purposes of Stinnett's proceeding, has opted out of the federal exemption scheme. IND. CODE 34-55-10-1 (2006); *see In re Ondras*, 846 F.2d 33, 34 (7th Cir. 1988).[3]

Stinnett contends that his disability insurance payments are exempt from the bankruptcy estate in their entirety pursuant to Indiana exemption law. The district court rejected this contention and concluded that under Indiana law Stinnett was only entitled to an exemption sufficient for the enjoyment of the "reasonable comforts of life." In this case, the bankruptcy court set that amount at $6000 per month.

The Indiana exemption statute in question, section 27-8-3-23(b) of the Indiana Code, is entitled "Exemption of benefits and premiums from judicial process" and provides in relevant part:

> The money or benefit provided or rendered by any corporation, association, or society authorized to do business under this chapter shall not be liable to attachment by garnishee or other process, and shall not be seized, taken, appropriated, or applied by any legal or equitable process, nor by any operation of law, to pay any debt or liability of a policy or certificate holder or any beneficiary named therein.

Stinnett argues that on its face this statute exempts 100% of his disability payments. However, the Indiana Supreme Court has interpreted the statute in light of a provision in

---

[3] Section 34-55-10-1 of the Indiana Code provides: "In accordance with Section 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. 522(b)), in any bankruptcy proceeding, an individual debtor domiciled in Indiana is not entitled to the federal exemptions as provided by Section 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. 522(d))."

the Indiana Constitution that establishes a debtor's privilege to exempt a "reasonable amount of property" in order to "enjoy the necessary comforts of life." IND. CONST. art. I, § 22. The Indiana high court has held that Indiana exemption statutes that do not contain any upper limit on the amount that may be exempted, such as the statute at issue here, are "constitutionally suspect" because they are inconsistent with article I, section 22 of the Indiana Constitution. *Citizens Nat'l Bank v. Foster*, 668 N.E.2d 1236, 1242 (Ind. 1996).

The state constitutional provision in question provides as follows:

> The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted: and there shall be no imprisonment for debt, except in case of fraud.

IND. CONST. art. I, § 22. In *Foster*, the Indiana Supreme Court found itself unable to "reconcile an unlimited exemption with the balanced approach required by Section 22's modest dictate that the amount set by the legislature be reasonable," and held that the drafters of the constitutional provision "clearly contemplated *some* cap." *Foster*, 668 N.E.2d at 1240 (citing *In re Zumbrun*, 626 N.E.2d 452 (Ind. 1993)). The Indiana court declined, however, to "declar[e] every limitless exemption statute to be unconstitutional per se." *Foster*, 668 N.E.2d at 1242. Rather, *Foster* directs courts applying any "constitutionally suspect" limitless exemption statute to "delve into [the] admittedly murkier waters of reasonable necessity[,]" notwithstanding the lack of specific limiting language in the statutes themselves. *Id.* By this, the court meant that limitless statutory exemptions may be claimed only to the extent they are "required to afford the 'necessities of life.'" *Id.*

In the present case, the bankruptcy court undertook the analysis directed by *Foster*, determined that Stinnett required $6000 per month to live comfortably, and consequently permitted Stinnett to exempt this amount of his disability payments from the bankruptcy estate. The district court affirmed both the bankruptcy court's legal analysis and its factual determination of a reasonable exemption amount.

Stinnett's contention on appeal is that *Foster*'s rejection of unlimited exemptions was intended to apply only to situations in which a debtor engages in abusive prepetition conduct such as the conversion of nonexempt assets into exempt assets in anticipation of bankruptcy. We do not read *Foster* to be so limited. The holding in *Foster* was not motivated by a concern for the potential abuse of an unlimited exemption by unscrupulous debtors, but rather by the facial incompatibility between a limitless exemption statute and the Indiana Constitution's "dictate that the amount set by the legislature be reasonable." *Id.* at 1240. The holding is rooted in what the court perceived to be a conflict between a limitless exemption statute and the constitutional limitation on the power of the state legislature to enact such a statute. The court thus resolved a purely legal question untethered to the conduct of any particular litigant. Accordingly, we reject Stinnett's attempt to relegate *Foster* to cases involving allegations of asset manipulation by the debtor. (Stinnett raises no challenge to the bankruptcy court's factual conclusion that $6000 is a reasonable exemption.)

## C. IRS Tax Lien

The preceding two issues were raised by Stinnett in appeal No. 05-1335. In a separate appeal that we ordered consolidated for oral argument and decision, No. 05-1733, Stinnett challenges the district court's conclusion that the

federal tax lien attaches to his disability payments from Guardian Insurance. Our holding on the issues raised in the first appeal, however, renders Stinnett without standing to maintain his claim concerning the tax lien.

We have agreed with the bankruptcy and district courts that all but $6000 per month of the combined disability payments is property of the bankruptcy estate. This means Stinnett is unable to realize any economic benefit from a potential reversal of the district court's decision that the IRS's lien attaches to the Guardian payments. We have previously addressed the question of a debtor's standing to object to a bankruptcy order in the following terms:

> Bankruptcy standing is narrower than Article III standing. To have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings. Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order. Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor.
>
> . . . .
>
> . . . If the debtor can show a reasonable possibility of a surplus after satisfying all debts, then the debtor has shown a pecuniary interest and has standing to object to a bankruptcy order.

*In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607-08 (7th Cir. 1998) (citations omitted).

It is undisputed that Stinnett's Chapter 7 bankruptcy petition listed assets in the amount of $394,530 and liabilities in the amount of $4,495,420. Clearly, all creditors will not be paid 100%, there will be no surplus remaining

after all creditors' claims have been paid, and Stinnett has no reasonable possibility of emerging from Chapter 7 with any estate property. Were we to reverse on the question of the IRS tax lien, the result would be that the disability proceeds would remain under the control of the Trustee free of the lien so that the Trustee could distribute them to creditors. Stinnett can realize nothing more than the $6000-per-month exemption ordered by the bankruptcy court, which we have affirmed. In the absence of a reasonable possibility of a claim to the assets of the estate, Stinnett has no standing to challenge the district court's decision and order on the IRS tax lien. The Trustee, as representative of the estate, would have standing to pursue an appeal concerning the tax lien, but has chosen not to do so.

Accordingly, in appeal No. 05-1335, the order of the district court is AFFIRMED. Appeal No. 05-1733 is DISMISSED for lack of jurisdiction.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*