WOLLMAN, Circuit Judge.
David Longaker appeals the district court’s[1] dismissal of his breach of contract and retaliation claims against Boston Scientific Corporation and Guidant Sales Corporation (collectively, Boston Scientific).[2] We affirm.
I. Background
In October 2009, Longaker entered into a three-year Employment Agreement (Agreement) with Boston Scientific to work as a sales representative. Pursuant to the Agreement, Boston Scientific paid Longaker an annual base salary and an annual base commission, an amount below which Longaker’s commissions would not drop. The Agreement guaranteed Lon-gaker these payments unless he quit or was terminated for certain reasons. The Agreement provided that Minnesota law governed any disputes relating to the contract and identified Minnesota as the forum for the resolution of such disputes. While employed by Boston Scientific, Lon-gaker lived and worked exclusively in California.
On September 30, 2010, Longaker filed for Chapter 7 bankruptcy. On October 1, 2010, Boston Scientific terminated Longak *660 er’s employment. In February 2011, Lon-gaker filed suit against Boston Scientific in California state court, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and retaliatory discharge in violation of California law. Boston Scientific removed the case to the United States District Court for the Northern District of California and filed a motion to dismiss for improper venue, which was granted based on the Agreement’s forum selection clause.
In January 2012, Longaker filed suit in the United States District Court for the District of Minnesota, reasserting his breach of contract claim and adding a claim for retaliation in violation of the Minnesota Human Rights Act (MHRA). Boston Scientific moved to dismiss Lon-gaker’s complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Longaker lacked standing to bring either claim, that judicial estoppel barred the breach of contract claim, and that the statute of limitations barred the MHRA retaliation claim.
Near the beginning of the hearing on the motion to dismiss, the district court asked whether Longaker’s MHRA retaliation claim remained viable and whether Longaker continued to assert it. Longaker’s attorney replied:
What I’m proposing is that I could amend the complaint, which seems consistent with what defendants want, I could amend the complaint to bring the retaliation cause of action under California law.
The district court explained that it was unlikely that Boston Scientific would consent to Longaker amending his complaint at that juncture of the case.
Longaker’s attorney and the district court resumed this discussion near the end of the hearing:
Attorney: Okay. So — so, again, if — if there is a ruling that [Longaker] cannot pursue his claim under the MHRA, I think it’s extreme to conclude that he can’t pursue his retaliation claim under any body of law, so I would argue that if Minnesota law doesn’t govern, then California law should.
District court: But my task will be to just determine what’s in the complaint and whether there’s a viable MHRA claim?
Attorney: And again, what I would seek leave to do if that happens is to amend the complaint to plead a claim under California state law.
The district court responded that if Lon-gaker’s attorney was to seek leave to amend, the local rules required that he submit an amended complaint and show how the amended complaint cured the initial complaint’s defects. Longaker did not file a motion to amend.
Thereafter, the district court found that Longaker lacked standing to assert his breach of contract claim because his interest in the guaranteed payments, although contingent at the time he filed for bankruptcy, was part of the bankruptcy estate. The district court also dismissed Longaker’s MHRA retaliation claim, finding that he lacked standing to assert a claim under the MHRA and that the statute of limitations barred the claim. On appeal, Lon-gaker argues that the district court erred in holding that he lacked standing to assert his breach of contract claim and that it abused its discretion in denying him leave to amend his complaint.
II. Discussion
A. Breach of Contract Claim
Longaker argues that the district court erred in holding that he lacked standing to assert his breach of contract *661 claim. We review de novo the district court’s grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency, 615 F.3d 985, 988 (8th Cir.2010).
Title 11 U.S.C. § 541 sets forth the property that comprises the bankruptcy estate. Section 541(a) provides in relevant part that the bankruptcy estate includes, with exceptions not applicable here: “(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case ... [and] (6) [proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.” 11 U.S.C. § 541(a)(1) and (a)(6). Section 541’s scope is broad, and it encompasses a debtor’s contingent interests under a pre-petition contract. See Stoebner v. Wick (In re Wick), 276 F.3d 412, 415 (8th Cir.2002) (debtor’s interest in stock options under pre-petition contract were part of bankruptcy estate even though the options were unvested and contingent on debtor’s continued employment); Ran v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir.1984) (debtor’s interest in “contract value” payment was part of bankruptcy estate even though the payment was “contingent at the time of filing and not payable” until the debtor was terminated). Under the Agreement, Longaker held a contingent contractual interest in the guaranteed payments. This interest would vest if Boston Scientific terminated him for a reason other than those provided in the Agreement. Relying on Ryerson and other cases, the district court held that this contingent interest became part of the bankruptcy estate at the time Longaker filed his bankruptcy petition.
Longaker does not raise a serious objection to the district court’s analysis on this issue. Instead, he argues that the guaranteed payments constitute post-petition earnings for services, which are excluded from the bankruptcy estate under § 541(a)(6).[3] Specifically, Longaker contends that, had Boston Scientific continued his employment, the guaranteed payments would have been post-petition earnings from services. Boston Scientific argues that § 541(a)(6)’s exception is inapplicable because Longaker did not perform any post-petition services.
A post-petition payment on a pre-petition contractual interest belongs to the bankruptcy estate if the payment is neither attributable to nor conditioned upon the debtor’s post-petition services. See Parsons v. Union Planters Bank (In re Parsons), 280 F.3d 1185, 1188 (8th Cir.2002) (rejecting debtor’s argument that § 541(a)(6) excluded debtor’s interest in real estate commissions received post-petition when debtor’s right to commissions was attributable to debtor’s pre-petition services); In re LaSpina, 304 B.R. 814, 820 (Bankr.S.D.Ohio 2004) (severance pay that debtor negotiated one week prior to filing for bankruptcy was not compensation for services performed post-petition and therefore was property of the bankruptcy estate). Relatedly, if the post-petition payment is attributable to the debtor’s pre- and post-petition services, the payment is divided, pro rata. That is, the portion of the payment attributable to the debtor’s pre-petition services remains property of the bankruptcy estate while the portion attributable to post-petition services is excluded from the estate under § 541(a)(6). See Wick, 276 F.3d at 416-17 *662 (limiting bankruptcy estate’s interest in stock options to the pro rata portion of the options related to debtor’s pre-petition services when terms of stock option agreement required debtor to work for one year and, at the time debtor filed for bankruptcy, she had only worked four months); Ryerson, 739 F.2d at 1425-26 (making pro rata distribution of “contract value” payment where amount of payment had increased because of debtor’s post-petition services).
The exception set forth in § 541(a)(6) does not apply to Longaker’s claim for the guaranteed payments because he did not perform any post-petition services. Even assuming that Boston Scientific must pay the guaranteed payments, those amounts are neither attributable to nor conditioned on Longaker’s post-petition services. We find the guaranteed payments analogous to the severance payment in LaSpina, where the court held that the payments, having no relation to the debtors’ post-petition services, were sufficiently rooted in the debtors’ pre-petition past and were therefore part of the debtor’s bankruptcy estate. LaSpina, 304 B.R. at 820. Because the guaranteed payments, if due at all, are property of the bankruptcy estate, Longaker lacked standing to assert his breach of contract claim.[4] See Prochnow v. Apex Props., Inc. (In re Prochnow), 467 B.R. 656, 665 (C.D.Ill.2012) (debtor lacked standing to pursue real estate commission that was property of the bankruptcy estate).
Longaker’s argument that had Boston Scientific not terminated him, the payments he received under the Agreement would have been future earnings falling within § 541(a)(6) does not require a different result. Courts construe § 541(a)(6)!s earning exception narrowly and apply it only to payments a debtor receives post-petition if the money is attributable to post-petition services actually rendered by the debtor. See Stinnett v. Laplante (In re Stinnett), 465 F.3d 309, 313 (7th Cir.2006) (“[C]ase law provides that the [earnings exception] should be interpreted ‘extremely narrowly’ and ‘excepts only earnings from services actually performed by an individual debtor.’ ” (quoting In re Prince, 85 F.3d 314, 323 (7th Cir.1996))); In re A’Heam, No. 11-00615, 2011 WL 4704235, at *6 (Bankr.N.D.Iowa Oct. 4, 2011) (“Funds are not subject to the [earnings exception] unless *663 they are paid as the result of actual services performed postpetition, or are conditioned upon the performance of continued services postpetition”)- Accordingly, Lon-gaker’s hypothetical argument does not render § 541(a)(6) applicable.
B. Retaliation Claim
Longaker admits that he never filed a written request to amend his complaint. Instead, he argues that he requested leave to amend his complaint during the motion to dismiss hearing and that the district court abused its discretion by not allowing him to do so. A review of the hearing transcript belies this argument. Although Longaker’s attorney discussed the possibility of amending his complaint, he indicated at the end of the hearing that he would seek leave to do so only if the district court dismissed the MHRA claim. The district court then explained that if “it’s part of your request to seek leave to amend,” the local rules required Longaker to submit an amended complaint and show how the amended complaint would cure the initial complaint’s defects. Longaker’s attorney’s response was that this was “probably a bridge that is not to be crossed today.” Because Longaker never requested leave to amend his complaint, the district court cannot be faulted for failing to allow him to do so. See Steele v. City of Bemidji, 257 F.Bd 902, 905 (8th Cir.2001) (explaining that a party “cannot fault the District Court for failing to grant him leave to amend when he did not seek permission to do so”).
III. Conclusion
The judgment is affirmed.

. The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

. Guidant Sales Corporation is a wholly-owned subsidiary of Boston Scientific.

. Although Boston Scientific contends that Longaker waived his argument concerning § 541(a)(6), we find that Longaker preserved the argument for appeal.

. The dissent asserts that "Boston Scientific prevented Longaker from actually providing post-petition services by firing him.” Post at 667. Under the "prevention doctrine,” "if the occurrence of an event which triggers the discharge of a promissor’s obligation is caused by the promissor’s culpable misconduct, the legal duty will not be discharged.” Stevenson v. Stevenson Assocs. (In re Stevenson Assocs., Inc.), 777 F.2d 415, 419 (8th Cir.1985). In Stevenson, the alleged misconduct included "a rash course of business ventures,” "improperly diverting] Associates’ resources,” "misusing] Associates’ stable credit record to secure additional financing,” "recklessly threatening Associates’ solvency,” and making the stock "worthless.” Id. at 420. Here, Longaker alleges that Boston Scientific fired him for a reason other than those provided in the Agreement. Merely terminating an employee's contract does not amount to misconduct under the prevention doctrine. Cf. id. at 419-20, citing Christensen v. Felton, 322 F.2d 323, 325-26 (9th Cir.1963) (invoking the prevention doctrine where evidence showed "that the purchaser had 'systematically looted the assets' of the purchased corporation, and that at the time of the transaction the purchased corporation’s assets were more than twice its liabilities, but upon bankruptcy one year later it was ‘hopelessly insolvent' ”). Moreover, Boston Scientific is not relying on the "non-occurrence” of Longaker’s post-petition services "to defeat [its] liability.” See post at 667. Assuming it fired him for a reason not provided in the contract, and must pay the guaranteed payments, Boston Scientific would not retain those amounts — they would go to the bankruptcy estate.